COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


NORMAN HOVERTER
                                             OPINION BY
v.        Record No. 2172-95-4      JUDGE JERE M. H. WILLIS, JR.
                                          NOVEMBER 12, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                       James L. Berry, Judge

          J. Michael Solak (Suzanne M. Perka; Hobert,
          Kerr & Perka, P.C., on brief), for appellant.

          Richard B. Smith, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.



     On appeal from his convictions of first degree murder and

abduction, Norman Hoverter contends that the trial court erred

(1) in denying his motion to withdraw his guilty pleas prior to

sentencing, and (2) in denying him funds to hire a clinical

psychologist to prepare for sentencing.  We find no error and

affirm the judgment of the trial court.

                                I.

     Hoverter was indicted for the first degree murder and

abduction of Valerie Smelser.  On July 3, 1995, the parties

entered into a plea agreement.  The Commonwealth agreed not to

bring any "further charges against [Hoverter] arising out of the

circumstances involving the abuse, neglect, and death of Valerie

Smelser, including, but not limited to any charge of alleged

sodomy."  Hoverter agreed to plead guilty to the murder and

abduction charges, pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). The agreement provided that on the murder charge, Hoverter would be sentenced "to serve a specific term of imprisonment to be determined by the Court after preparation of a Pre-Sentence Report" and that on the abduction charge, he would receive a ten year suspended sentence. Hoverter retained the right to withdraw his pleas if the trial court rejected the agreement.

On July 25, 1995, Hoverter and the Commonwealth's Attorney presented the plea agreement to the trial court. The following dialogue occurred between the trial court and Hoverter:

BY THE COURT:

Q    Tell me your full name sir?

A    Norman Hoverter.

Q    What is your age Mr. Hoverter?

A    Fifty.

Q    Your date of birth?

A    6/12/45.

Q    What is the last grade of school you completed?

A    Sixth.

Q    Sixth grade. What other education have you received?

A    That's it.

Q    I'm sorry?

A    None.

Q    As you stand here now, are you presently

using any drugs, any medications or any alcohol?

A    No.

Q    Are you the person charged in the indictments with commission in [sic] the offenses of murder and abduction?

A    Yes.

Q    Do you fully understand each of those charges against you?

A    Yes.

Q    Have you discussed each of those charges and the elements with your attorneys so that you understand what the Commonwealth would have to prove before you can be found guilty of either of those charges?

A    Yes.

Q    Okay, do you understand the question?

A    Yes.

Q    All right. Have you had enough time to discuss with your attorneys any possible defenses that you might have to either of those charges?

A    Yes.

Q    Have you discussed with your attorneys whether you should plead not guilty or guilty? Have you discussed that with your attorneys? I'm sorry.

A    Yes.

Q    All right. After these discussions did you decide yourself that you should plead guilty?

A    Yes sir.

Q    Okay. The question is whether you made the decision or somebody forced you to make the decision?

A     No.

Q     You made it?

A     Yes.

Q     Are you entering those pleas of guilty freely and voluntarily?

A     Yes.

Q     Are you entering those pleas of guilty because you are in fact guilty of the crimes charge[d]?

A     No.

The Commonwealth's Attorney then stated a summary of the evidence that the Commonwealth would present in support of the charges. The trial court then resumed its dialogue with Hoverter as follows:

BY THE COURT:

Q     Mr. Hoverter, are you pleading guilty because this is the Commonwealth's evidence and you don't want to take the risk that you would be found guilty by a jury on that evidence beyond a reasonable doubt?

A     Yes.

Q     Do you understand that by pleading guilty, you are not entitled to a trial by jury?

A     Yes.

Q     Do you understand by pleading guilty you give up your right not to incriminate yourself?

A     Yes

Q     Do you understand by pleading guilty you give up your right to confront and cross examine your accusers?

A     Yes sir.

- 4 -

Q    Do you understand by pleading guilty you give up your right to defend yourself?

A    Yes.

Q    Are you presently serving a penitentiary sentence or on probation or on parole?

A    No.

Q    Has anyone connected with your arrest and prosecution such as the police or the Commonwealth's Attorney or any other person in any manner threatened you or forced you to enter these pleas of guilty?

A    No.

Q    Have they made any promises concerning your pleas of guilty?

A    No.

Q    Do you understand that if you are sentenced consecutively on these charges, the maximum punishment for these crimes is life plus 10 years in prison plus all court costs?

A    Yes.

Q    Are you satisfied with Ms. Perka's and Mr. Solak's services and their representation of you in these matters?

A    Yes.

Q    Do you understand by pleading guilty you may waive any right to appeal the decision of this Court?

A    Yes.

Q    Mr. Hoverter the Court has been handed what is essentially a two page plea agreement with an attached five, six page acknowledgment of rights, both of which bear your signature or appear to bear your signature under the date of July 3, 1995.  Is this in fact your signature Mr. Hoverter on these two documents?

A    Yes.

Q    And you signed these on July 3?

A    Yes.

Q    At the time you signed this plea agreement
     particularly had you read the plea agreement?

A    Yes sir.

Q    Do you read and write?

A    Some, yes.

Q    And were you able to read this by yourself?

A    No.

Q    Okay, you were assisted by your attorneys?

A    Yes.

Q    You could read part of it and couldn't
     understand some of the words and they helped
     you with those?

A    Yes sir.

Q    In addition to reading it in the manner you
     described, did your attorneys explain to you
     and describe for you the contents of the plea
     agreement?

A    Yes.

Q    So that at the time you signed this plea
     agreement on July 3rd and as you stand here
     now, did you have and do you have a full and
     complete understanding of the terms and
     conditions of this plea agreement?

A    Yes.

Q    And does this agreement contain the full and
     complete agreement entered into among you,
     your attorneys and the Commonwealth's
     Attorney?

A    Yes.

Q     You understand the Court may accept the plea agreement or may reject the plea agreement or may defer any decision to either accept or reject until there has been an opportunity to consider a presentence report?

A     Yes.

Q     Do you understand that if the Court accepts the plea agreement, the Court will include in [its] judgment and sentence a sentence provided for in the plea agreement?

A     Yes.

Q     Do you understand that as far as the sentence provided for in the plea agreement, the only limitation on the sentence to be imposed in the plea agreement is that the 10 year sentence on the abduction charge be suspended, there isn't any limitation on the life sentence?

A     Yes.

Q     And that the Court could impose anything from 20 years to life on that charge without restriction by the plea agreement?

A     Yes.

Q     And the Court could suspend all, part, or none of any sentence imposed on that charge without restriction by the plea agreement. Do you understand that?

A     Yes.

Q     Do you understand that if the Court rejects the plea agreement, you will not be bound by the plea agreement?  You will be given an opportunity to withdraw your pleas of guilty and if you do that, your trial may be held before another judge of this Court?

A     Yes.

Q     Do you understand that?

A     Yes.

- 7 -

Q    Do you understand that if the Court rejects
     the plea agreement and you are given the
     opportunity to withdraw your plea of guilty
     and you don't do that, you continue in your
     pleas of guilty, then the sentence imposed
     may be more severe than that contained in the
     plea agreement?  Do you understand that also?

A    Yes.

Q    Have you understood all the questions I have
     asked you?

A    Yes.

Q    Do you have any questions for the Court?

A    No sir.

Whereupon, Hoverter was arraigned on both charges and on each

charge pleaded, "Guilty of the Alford Plea."  The trial court

found the "pleas of guilty to be freely, intelligently and

voluntarily made with an understanding of the nature of the

charges and the consequences of the pleas and [accepted the]

pleas at [that] time."  The trial court deferred acceptance or

rejection of the plea agreement pending receipt of a presentence

report.

Following Hoverter's arraignment, the Commonwealth's

Attorney gave a press conference.  A newspaper reported that the

Commonwealth's Attorney stated at the press conference that he

never intended to charge Hoverter with sodomy and that he lacked

sufficient evidence to bring such a charge.  On August 10, 1995,

Hoverter moved to withdraw his guilty pleas.  He alleged that he

had entered into the plea agreement desiring to avoid prosecution

for sodomy and upon the understanding that the Commonwealth would prosecute him for sodomy unless he pleaded guilty to murder and abduction. He further alleged that his decision to plead guilty was based upon the Commonwealth's Attorney's false assertion that the Commonwealth intended to charge him with sodomy.

On August 25, 1995, the trial court conducted a hearing on Hoverter's motion to withdraw his guilty pleas. The Commonwealth's Attorney testified that his statements regarding a sodomy charge, as reported in the newspaper, were incorrect. He testified that he had sufficient evidence to bring such a charge, intended to do so, and had authorized the Assistant Commonwealth's Attorney to proceed. The Assistant Commonwealth's Attorney testified that he had prepared a sodomy indictment and intended to present it to the July 6, 1995 grand jury. Special Agent Shevokas testified that he had been notified to appear before the grand jury on July 6, 1995 to present the sodomy charge. At the conclusion of the hearing, the trial court found "no evidence . . . of any misrepresentation to the defendant of any material fact that would have induced him to enter into the guilty plea." The evidence supported this finding. The trial court accepted the plea agreement and sentenced Hoverter in accordance with it.

> In the absence of statutory regulation or established practice, whether or not an accused should be allowed to withdraw a plea of guilty for the purpose of submitting one of not guilty is a matter that <u>rests within the sound discretion of the trial court</u> and is to be determined by the facts and

circumstances of each case. . . . [T]he motion should not be denied, if timely made, and if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and would not otherwise have been made.

Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949) (emphasis added).

Code § 19.2-296 provides:
> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Hoverter moved to withdraw his guilty pleas before sentence was imposed. Thus, his motion was timely under the statute.

Hoverter asserts no honest mistake of material fact or facts. He contends that the Commonwealth induced his pleas by fraud or coercion when it represented to him that it would prosecute him for sodomy when, according to the newspaper account of the press conference, the Commonwealth's Attorney never intended to prosecute him for sodomy and lacked the evidence to do so.

The evidence adduced at the hearing on Hoverter's motion does not support his contention. The Commonwealth's Attorney acknowledged that he may have misspoken at the press conference, noting that it was an excited and confused event. However, the Commonwealth's Attorney testified that had there been no plea agreement, he fully intended to prosecute Hoverter for sodomy and had authorized his assistant to seek an indictment on that charge. This testimony was corroborated by the Assistant Commonwealth's Attorney and by the state police investigator who was scheduled to appear before the grand jury. This testimony supports the trial court's finding that, regardless of what may

have appeared in the newspaper report, the Commonwealth's Attorney made no misrepresentation to Hoverter and that Hoverter's guilty pleas were not based on fraud or coercion.

"[T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it can not be disturbed." Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987) (citation omitted).

> "The plea of guilty to a serious criminal charge should be freely and voluntarily made, and entered by the accused, without a semblance of coercion, and without fear or duress of any kind, and the accused should be permitted to withdraw a plea of guilty entered unadvisably when application therefor is duly made in good faith and sustained by proofs . . . ."

Parris, 189 Va. at 325, 52 S.E.2d at 874 (citation omitted).

Before accepting Hoverter's guilty pleas, the trial court examined him conscientiously and thoroughly. That examination leaves no room for doubt that Hoverter's pleas were freely and voluntarily made, were entered by him without a semblance of coercion and without fear or duress of any kind. Hoverter alleged misrepresentation, but his proof failed to support that allegation. The evidence established that the Commonwealth dealt openly and honestly with Hoverter in negotiating the plea agreement, that the Commonwealth withheld or misrepresented no material fact, and that the Commonwealth scrupulously discharged

its duties under the plea agreement.  The evidence supports the trial court's determination that the Commonwealth made no misrepresentation of any material fact to Hoverter to induce the plea agreement and his guilty pleas.  Thus, the trial court did not abuse its discretion in denying Hoverter's motion to withdraw his pleas.

## II.

Hoverter next contends that the trial court violated his constitutional right to due process by denying him funds to employ a mental health expert to prepare for sentencing.  On August 10, 1995, the trial court conducted a hearing on Hoverter's motion for the appointment of "a mental health expert to conduct a psychological evaluation" for his sentencing hearing.  Hoverter's counsel stated that they needed the expert "to determine if psychological or mental health mitigation evidence exists," and, if so, "to aid him in the development and presentation of such evidence for the sentencing proceeding."

After considering the representations and argument presented by counsel, the trial court denied the motion.  It ruled that "there has been no showing of either necessity or that such evidence would likely be a significant factor in the determination of the appropriate sentence."

Whether to provide a defendant expert assistance at state expense lies within the sound discretion of the trial court, and the burden is on the defendant to show that this discretion has

been abused.  O'Dell v. Commonwealth, 234 Va. 672, 687, 364 S.E.2d 491, 499, cert. denied, 488 U.S. 871 (1988).  An indigent defendant's constitutional right to the appointment of an expert at state expense is not absolute.  Rather, "an indigent defendant who seeks appointment of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is 'likely to be a significant factor in his defense,' and that he will be prejudiced by the lack of expert assistance."  Husske v. Commonwealth, 252 Va. __, __, S.E.2d __, __ (1996) (quoting Ake v. Oklahoma, 470 U.S. 68, 82-83 (1985)).  Hoverter was required to show a particularized need for the requested services and that he would be prejudiced by the lack of expert assistance.  See id. at ___, ___ S.E.2d at ___. He failed to do so.

Hoverter alleged no existing mental illness.  He demonstrated no way that the services of an expert might constitute a significant factor in his defense.  He showed no prejudice resulting from the non-appointment of an expert, nor did he explain why the detailed presentence investigation would not sufficiently reflect any "mitigation evidence."

At most, we surmise, Hoverter hoped that a psychological examination would support a decision for leniency at the sentencing hearing.  However, a mere hope or suspicion that favorable evidence may result from an expert's services does not create a constitutional mandate.  See id. at __, __ S.E.2d at __.

Accordingly, we hold that the trial court did not abuse its discretion in denying the motion.

For these reasons we affirm the convictions.

<u>Affirmed</u>.