COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


TONY KNOX

MEMORANDUM OPINION* BY
v.   Record No. 0533-00-1       JUDGE G. STEVEN AGEE
                                        MAY 1, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Theresa B. Berry (Berry, Ermlich, Lomax &
Meixel, on brief), for appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


Tony Knox ("defendant" or "Knox") was indicted on four

counts of attempted malicious wounding, four counts of use of a

firearm in the commission of a felony, four counts grand

larceny, one count robbery, one count attempted robbery, three

counts conspiracy and one count possession of burglary tools.

He pled guilty in the Circuit Court of the City of Virginia

Beach to one count each of robbery, use of a firearm, and

attempted robbery, and to four counts of grand larceny.  He was

tried and convicted by the trial court sitting without a jury,

of three counts of attempted malicious wounding and three counts

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

of use of a firearm.  The remaining charges were <u>nolle prosequied</u>.

Prior to the sentencing hearing, the defendant moved the court to allow him to withdraw his guilty pleas and to reconsider the findings of guilty as to the offenses for which he was convicted at trial.  The court denied his motions and sentenced the defendant to serve a total of 22 years in prison.

The defendant now appeals his convictions averring that the evidence was insufficient to support the convictions for attempted malicious wounding and the related use of a firearm in the commission of a felony.  In addition, he appeals the circuit court's denial of his motion to withdraw his guilty pleas.  For the reasons set forth below, we affirm the convictions and hold the trial court did not err in denying the motion to withdraw the guilty pleas.

I.

BACKGROUND

In August and September 1997, Tony Knox, age 17, and a younger cousin, Maurice Lewis, age 13, stole four vehicles in and around Virginia Beach which they later abandoned.  Knox found a handgun in one of the vehicles which he kept and practiced shooting it in some woods.  He used this handgun to perpetuate all the robberies and to fire at the intended victims.

-

When Knox and Lewis stole the last vehicle on or about September 27, 1997, they used it to stalk and rob at gunpoint Matthew Swingle, a pizza delivery driver. On September 28, 1997, William Love, another pizza delivery driver, noticed a black truck following him while he was driving to a delivery. When he reached his customer's address, Love went to the front door of the house as he heard tire noises. The black truck had stopped between forty and fifty feet away from the front door where Love was standing while he rang the doorbell. Love then asked Knox, the driver of the truck, what he wanted. The defendant responded, "You know what the F we want."

The customer, Albert Riley, opened the door and Love said he suspected he was about to be robbed. He then heard a sound "like a loud firecracker" and the truck sped off. The delivery driver and the customer then observed a bullet hole in an interior wall of the house at about chest height "not even twelve inches" from where Love and the customer had been standing. The bullet hole had not been present in the home earlier.

At the same time, Michael Duffy was walking down the street from Riley's house when he heard a gunshot and noticed Knox's vehicle traveling at a high rate of speed. The vehicle initially passed Duffy but then returned towards Duffy; the front passenger window was down and the truck slowed to nearly a stop. When the vehicle was about ten feet away from him, Duffy

-

saw a muzzle flash and felt an "explosion of noise" that literally knocked him off his feet.

Knox also saw Anthony Morris delivering a pizza on September 28, 1997. Knox testified he removed the clip from his gun when he approached Morris as he sat in his truck, then stuck the unloaded gun through the open window and demanded money. Morris grabbed the defendant's hand, pinning it against the vehicle and began to drive off. Knox freed his hand from Morris' grasp, reloaded the gun and fired at Morris hitting the driver's side doorframe, just above the level of the driver's head. The shot was fired from such short range the shell casing landed in the back of Morris' truck.

When the defendant was interviewed about these events by police he stated that he had followed a pizza driver (Love) through a neighborhood and was "pissed off" at the driver because the driver was trying to "lose him." He further stated, "the guy on the porch looked like he was trying to be a smart-ass," so Knox had his cousin lean back in the seat so he could fire the gun at Love.

The defendant then admitted to Detective J.G. Mentus that after he shot at the pizza driver on the porch, he drove down the street and saw a family walking. After seeing the man point at him, he slowed down, stopped in front of the guy, pointed the gun at him and fired one shot before driving off.

-

Knox also admitted to approaching a second pizza delivery driver sitting in his vehicle, pointing a gun at him and demanding money. He stated the driver grabbed the weapon and they wrestled for control of the gun. The defendant then admitted to shooting at the driver "because he grabbed my hand."

At trial on August 5, 1998, the Commonwealth submitted to the court stipulated evidence, offered in connection with the defendant's guilty pleas, establishing that the defendant and Maurice Lewis had committed grand larceny of four automobiles during a period in August and September 1997 and that they robbed the first pizza delivery driver, Matthew Swingle. In addition, a portion of Maurice Lewis' statement was read into evidence that established that the defendant was present and fired the gun in all three incidents for which he was being tried.

The defendant testified that he ran out of money to buy marijuana and alcohol and "decided . . . to get fast money . . . I would rob people." He admitted that he was planning to rob Love, but denied that he was angry because Love was trying to lose him. He did not approach Love on the porch because Love would have been able to see his face. He admitted to firing the gun at Duffy because he thought Duffy was trying to get the license plate number of the truck. He also admitted to shooting at Morris.

-

The defendant was convicted at trial of three counts attempted malicious wounding for trying to shoot Love, Duffy and Morris and three counts use of a firearm in the commission of a felony. Prior to his sentencing hearing on December 2, 1998, the defendant moved the court to set aside the findings of guilty and to permit withdrawal of his pleas of guilty on the other charges. The defendant alleged that his pleas were entered on a mistake of fact, which was that he had been unaware of a defense of not guilty by reason of insanity, and that the court should enter a finding of insanity at the time of the offenses. The court heard evidence on the defendant's motion.

The evidence presented indicated that the defendant freely underwent multiple psychiatric and psychological tests before and after his arrest, primarily by Dr. Earle Williams, a licensed clinical psychologist. In an October 8, 1997 evaluation, nearly a year before his trial, the defendant was diagnosed as "possibly bipolar and psychotic" by Dr. Williams. This evaluation was sought and obtained by the Knox family.

Shortly thereafter, Dr. Williams was asked by the court to determine the defendant's competency to stand trial and to perform an evaluation of the defendant's mental state at the time of the offenses. The evaluation was performed December 6, 1997, and the defendant was specifically found to be competent to stand trial. The evaluation of the mental state at the time of the offenses, however, was never entered into evidence, but

-

defense counsel had received a copy.  Dr. Williams noted in his report to the court that Knox had been treated by Dr. Sacks.

Upon an evaluation dated November 12, 1998, months after the trial, Dr. Williams opined in a report sought by Knox that the defendant suffered from a severe and undiagnosed "bipolar disorder."  The condition manifests itself in mood swings ranging from a depression stage to a manic phase causing the sufferer to be subject to irresistible impulses.  In addition, Dr. Williams diagnosed the defendant as suffering from "intermittent explosive disorder."

Dr. Williams testified at the December 2, 1998 hearing that he believed the defendant "was in a psychotic state at the time of the offense."  The basis for this diagnosis included representations by Knox's family that the behavior was different than his usual behavior and on reports of Dr. Sacks and a Dr. Pal, which Dr. Williams said he did not have when he did the earlier reports.  Nonetheless, Dr. Williams testified "that all during the course of Tony's rampage, he knew right from wrong," but that "my professional opinion is such that he was suffering from an irresistible impulse, was on a roll and just didn't have the wherewithal to stop himself once he was going."

On cross-examination, Dr. Williams admitted he had never seen Knox in any psychotic episode and that he was not psychotic.  Further, Dr. Williams testified that planning of the

-

type done by Knox to facilitate the robberies would "belie any sort of irresistible impulse."

After hearing Dr. Williams' testimony, the trial court denied the motion to withdraw the guilty pleas and set aside the findings of guilty.

## II.

### SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to prove that he attempted to maliciously wound Love, Duffy and Morris. He argues that the evidence does not support the trial court's conclusion that he intended to wound his victims. We disagree.

When the sufficiency of the evidence is challenged, we consider all the evidence, and any reasonable inferences fairly deducible therefrom, in the light most favorable to the party that prevailed at trial, which is the Commonwealth in this case. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Witness credibility, the weight accorded the testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). A trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. See Code § 8.01-680.

-

To convict the defendant of attempted malicious wounding, the Commonwealth was required to prove two elements. First, that Knox intended to "maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill." See Code § 18.2-51. Such intent of the accused may be inferred from the facts and circumstances of the particular case. For instance, intent may be proven by the accused's acts and statements and be shown by circumstantial evidence. David v. Commonwealth, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986). The Commonwealth must also prove the second element, that the accused committed a direct but ineffectual act toward that purpose. Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998).

Presented to the trial court was a description of a crime spree of almost two months that involved the stealing of cars and a gun and then the use of a stolen car and the gun in a planned scheme to follow and rob pizza delivery drivers. The trial court heard evidence that the defendant admitted to approaching a pizza delivery driver, demanding money and, upon the hesitation of the driver, placing a gun in front of the victim's face and then firing the weapon shattering the passenger window of the victim's car.

The trial court also heard that the defendant confronted two other pizza delivery drivers, one by following him through a neighborhood and then yelling out of the vehicle's window, and

the other by directly approaching and pointing a gun at him. Both drivers managed to avoid being robbed, but the defendant, angered at the complications, fired a gun at both, and barely missed. It was also presented to the court that after fleeing the scene of the Love incident, the defendant feared Mr. Duffy had his license plate number. Knox then drove past Duffy a second time, slowed, and fired at Duffy, just missing him.

From these acts and the defendant's statements to police, the trial court could reasonably infer that the defendant intended to maim, disfigure, or disable each of the three victims. The evidence supports the trial court's finding that the defendant's deliberate acts of stalking the victims and then aiming and firing the gun directly at them justified an inference that he intended to maim, disable, disfigure, or kill them. Further, these intentional acts were malicious. "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). Therefore, we find there was sufficient evidence on each count for the trial court to find the defendant guilty of attempted malicious wounding.

As the evidence supports the finding of attempted malicious wounding, and each attempt was committed with a firearm, the trial court did not err in denying the defendant's motion to strike the evidence in regards to the firearm charges.

-

III.

WITHDRAWAL OF GUILTY PLEAS

The defendant's second contention on appeal is that the trial court erred in denying his motion to withdraw his guilty pleas. Code § 19.2-296 permits the withdrawal of a guilty plea prior to sentencing; however, "'[w]hether or not an accused should be allowed to withdraw a plea of guilty . . . is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" Hoverter v. Commonwealth, 23 Va. App. 454, 464, 477 S.E.2d 771, 775 (1996) (quoting Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949)). The trial court's finding on the motion will not be disturbed unless plainly wrong or without evidence to support it. See id. at 465, 477 S.E.2d at 776.

A motion to withdraw a plea should be granted

> "if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and would not otherwise have been made."

Id. at 464, 477 S.E.2d at 775 (quoting Parris, 189 Va. at 324, 52 S.E.2d at 873). Determining whether a court erred in declining to allow a withdrawal of a guilty plea "requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he pleaded to the charge." Parris, 189 Va. at 322, 52 S.E.2d at 872.

-

In this case, the defendant alleges he entered his pleas under a material mistake of fact, i.e., he was unaware of a possible psychiatric defense.  He argues, therefore, that his pleas of guilty were, at the very least, inadvised.  Collaterally, he argues he was unable to present a defense of insanity by irresistible impulse at trial.  Denial of his motion would therefore be manifest injustice.  We disagree.

The trial court heard evidence on the motion that indicated that the defendant freely underwent multiple psychiatric and psychological tests before and after his arrest.  In one evaluation, nearly a year before his trial, the defendant was diagnosed as possibly bipolar and psychotic.  The defendant or his counsel were aware of these tests and evaluations, yet either failed to explore and coordinate the reports and findings in order to determine his true condition and the possibility of an insanity defense or chose not to do so.

Moreover, the submitted diagnosis and basis of an insanity defense was that the defendant was subject to and acted under an irresistible impulse.  Evidence that an accused planned his or her criminal acts precludes, as a matter of law, any finding that the accused acted under an irresistible impulse.  See Rollins v. Commonwealth, 207 Va. 575, 580, 151 S.E.2d 622, 625 (1966).  Even Dr. Williams' testimony was that planning would negate a claim of irresistible impulse.

-

The stipulation of evidence accompanying the defendant's guilty pleas established that (1) on four different dates between August 2, 1997 and September 27, 1997 the defendant stole four vehicles and (2) on or about September 28, 1997, the defendant and an accomplice robbed one pizza delivery driver and attempted to rob another. Further, the defendant testified that when he ran out of money to buy drugs and alcohol he decided to rob pizza delivery drivers.

As the evidence proved that the defendant planned his crimes he would not have been entitled, as a matter of law, to a jury instruction on irresistible impulse. Thus, the defendant had no viable insanity defense if the trial court had allowed him to withdraw his pleas. The trial court did not abuse its discretion in denying the motion to withdraw the guilty pleas or to set aside the findings of guilt.

Accordingly, the defendant's convictions are affirmed.

<u>Affirmed</u>.

-

Benton, J., concurring.

I concur with the majority opinion's holding that the trial judge did not err in refusing to allow Tony Knox to withdraw his guilty pleas to the charges of robbery, use of a firearm, attempted robbery, and four counts of grand larceny. I also concur with the majority opinion's holding that the evidence at trial was sufficient to prove beyond a reasonable doubt the charges of attempted malicious wounding and the corresponding charges of using a firearm in the attempts to wound. Although I agree that the trial judge did not err in refusing to set aside the convictions for the attempted malicious woundings and use of a firearm in those woundings, I do so for slightly different reasons than the majority.

We must analyze this claim under different rules than those used to decide whether the trial judge should have allowed Knox to withdraw his guilty pleas. Upon Knox's plea of <u>not</u> <u>guilty</u>, the trial judge heard the evidence and convicted him of the charges of attempted malicious wounding and the corresponding firearm charges. Prior to sentencing, Knox filed a motion to set aside his guilty pleas and the findings of guilt on those charges to which he pled not guilty. Knox argues on appeal that "had this [additional psychological] information been available

-

. . . prior to the trial, [he] would have tried all of the charges on a plea of not guilty by reason of insanity."[1]

Likening the psychologist's report "to after discovered evidence, which can be presented any time within twenty-one (21) days after sentencing," Knox asserts that "[w]hen new evidence is obtained . . . between . . . a trial, and the sentencing thereon, the defendant must be given the chance to present that evidence to the appropriate finder of fact."  In short, based upon a claim of after-discovered evidence, Knox is seeking a new trial on the malicious wounding and firearm charges to which he pled not guilty.  At that trial, Knox would raise the insanity defense of irresistible impulse.

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance.  The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

---

[1] "Neither [Code § 19.2-254] nor any other statute authorizes or requires an accused to enter a plea of 'not guilty by reason of insanity.'"  Jones v. Commonwealth, 28 Va. App. 444, 447, 506 S.E.2d 27, 29 (1998).  However, to preserve for trial the issue of an accused's sanity at the time the offense, the accused is required to give notice to the Commonwealth at least twenty-one days prior to trial of an intention to present such evidence.  See Code § 19.2-168.

–

<u>Odum v. Commonwealth</u>, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) (citation omitted).

I believe that Knox established the first and third elements of this test. The Commonwealth does not challenge the fact that he discovered this evidence after the trial. Clearly, the evidence is not cumulative because Knox did not put his insanity at issue at trial.

Furthermore, I believe that Knox has satisfied the fourth element. Dr. Williams' testimony is material. The psychologist testified that upon a post-trial forensic evaluation of Knox, he concluded that Knox was suffering from an irresistible impulse when he shot the gun during these criminal events. Although it is within the province of the fact finder to decide whether Knox planned his acts or acted upon an irresistible impulse, Dr. Williams' testimony provides a reasonable basis upon which a trier of fact could have found that Knox was suffering from an irresistible impulse when he fired the gun in the attempted malicious woundings.

Regarding the third element, however, the record does not establish that this evidence could not have been secured for use at trial in the exercise of reasonable diligence. When Dr. Williams performed the pretrial insanity evaluation, Knox could have requested an evaluation at that time for both levels of insanity recognized in Virginia. <u>See</u> <u>Bennett v. Commonwealth</u>, 29 Va. App. 261, 277, 511 S.E.2d 439, 447 (1999)

-

(holding that "Virginia law recognizes two tests by which an accused can establish criminal insanity, the M'Naghten Rule and the irresistible impulse doctrine").  No evidence in the record provides an explanation why this was not done.  Accordingly, I would hold that the record fails to establish "the evidence could not have been obtained for use at trial in the exercise of reasonable diligence."  Odum, 225 Va. at 131, 301 S.E.2d at 149.

For these reasons, I concur in affirming the convictions.