COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Annunziata and Clements
Argued at Alexandria, Virginia

HUGO ALEXANDER SANCHEZ, A/K/A
ALEXANDER HUGO ORTEGA

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
AUGUST 26, 2003

v. Record No. 2970-01-4

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

Jeanne E. Klapps, Senior Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

John H. McLees, Senior Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Hugo Sanchez was charged with carjacking in violation of Code § 18.2-58.1. A jury convicted him, and he received a sentence of seventeen years.[1] He now appeals on the grounds that the trial court erred 1) in denying his request for additional funds for an expert witness and 2) in denying his motion to exclude evidence of a witness' identification. For the reasons that follow, we affirm.

---

[1] Sanchez was also tried and convicted on the charge of using a firearm in the commission of a felony, in violation of Code § 18.2-53.1. This conviction is not at issue in this appeal.

## Facts

On November 23, 1999, Helen Unangst was about to enter her car, a green 2000 Honda Accord, which was parked in the parking lot of her Vienna apartment complex. Two men drove up and asked her for directions to building number 2562. The two men exited their car and the driver approached Unangst, put his arm around her, and placed a gun to her abdomen. The two men began to pull Unangst towards their car and demanded her car keys. Unangst complied. Sanchez took the keys and drove away in Unangst's Accord. His companion followed in the car in which they arrived.

A few days later, the Virginia State Police telephoned Unangst and informed her that her car had been found and that she could come and retrieve her property. Unangst retrieved her personal property from the car, but the vehicle itself was "totaled." The police found the stolen car in the late morning of November 26, 1999, in a wooded area off the shoulder of the Dulles Toll Road.

At Sanchez's preliminary hearing in March 2001, Unangst described the carjacking driver as approximately her height with an Hispanic accent. She also identified Sanchez as the driver, although she had earlier identified another individual as the driver while she was at the courthouse for the preliminary hearing of Sanchez's codefendant in Spring 2000.

At Sanchez's trial, Unangst denied that, before trial, the prosecutor told her that Sanchez confessed to the carjacking. She identified Sanchez as the driver and further testified that both men who carjacked her car had Hispanic accents. She described the driver as "[her] height or a little bit taller," with a goatee, and "fairly broad, Hispanic type features, [and] a rough voice." She also stated he was in his mid to late twenties. Police Officer Jody Donaldson testified that Unganst described the driver on the date of the carjacking, as Hispanic, between 5'4" and 5'6" in height, with a moustache. Unangst, who is 5'3" in height, conceded at trial that she might have earlier told a police officer that the driver was 5'6" tall and she did not recall saying that he had a moustache.

The forensic technician who ran tests on the car testified that he found a shoe impression on the inside of the driver's side front window. The impression was consistent with a right shoe belonging to Sanchez, in outsole design, approximate size, and wear. The laboratory could not definitively identify Sanchez's shoe as the one that left the impression, however.

DNA analysis of bloodstain samples taken from the wrecked car revealed that blood found on the inside of the driver's door belonged to Sanchez. Stains of another passenger's blood were found on the guardrail and steering wheel airbag. A mixture of the same passenger's blood and the blood of an unidentified individual were found on the front left headrest and seat.

On December 7, 1999, Sanchez spoke with Corporal David C. Anderson, of the Montgomery County Police Department. He waived his Miranda rights and spoke with Corporal Anderson about the carjacking that occurred on November 23, 1999. Sanchez told Anderson that he and another man went to Virginia on the morning of November 23, 1999, to carjack a car. He stated they drove up to a woman in an apartment complex as she was getting into her Honda Accord and asked her about building numbers. Sanchez stated that he and the other man exited their car and that Sanchez approached the woman, showing her the black BB gun he had in his waistband. He demanded and received the keys to her car, after which he drove away in the Honda.

Several months prior to trial, Sanchez moved the court for funds to employ a DNA expert witness and a DNA expert investigator in order to evaluate the Commonwealth's DNA evidence and the processes by which it was developed. The trial court granted Sanchez $3,000 to engage DNA consultants as he saw fit.

Before the trials began, Sanchez moved the court for additional funds to pay for his expert witnesses to testify at each trial, stating the expert witness' pretrial evaluations had depleted the previously allotted funds, that the expert would need no more than one-half day to present his testimony, and that his court appearance fee would be $250 per hour or a

maximum of $1,750 per day. The reasonableness of the expert witness' expected fees was not contested.

Counsel represented to the court that the testimony would be material to the defense. However, he initially declined to reveal the substance of the expected testimony unless permitted to do so in an ex parte proceeding, which the Commonwealth opposed. The court denied the motion, stating, "I'm not inclined to have the motion to be made ex parte. So unless there's something further, the Court is going to deny your motion for additional funds." Defense counsel responded to the court's denial of Sanchez's motion by stating that the expert would testify that there were errors in the way the DNA procedures were followed and, therefore, that the DNA results would be challenged. Sanchez offered the following proffer:

> [W]e . . . [had the expert] go over the [DNA] documents from the state laboratory. There are approximately four or five inches worth of documents that he has reviewed. In that documentation, he has noticed that there were errors in the way that the DNA procedures were followed, that there were errors in the way the examination was done, which could have had a significant impact in the results of the DNA.
>
> So therefore the DNA results that the Commonwealth is going to put forth as being scientifically valid could be questioned, will be questioned, to an extent by our expert witness and therefore the Commonwealth's only other evidence, other than the DNA which we submit would not be credible, would be testimony of one witness.

> So it is certainly material for the defense as to whether Mr. Sanchez was in that car for those reasons.[2]

The trial court denied Sanchez's motion, and he was subsequently convicted of carjacking, in violation of Code § 18.2-58.1, and sentenced to seventeen years. This appeal followed.

## Analysis

### I. Denial of Motion for Additional Funds For Expert Witness

On appeal, Sanchez contends the trial court erred in refusing his request for additional funds for his expert witness on the ground that he established a particularized need for the funds. We agree.

The United States Supreme Court established an indigent defendant's right to the assistance of an expert at the state's expense in Ake v. Oklahoma, 470 U.S. 68 (1985). Citing the Due Process Clause of the Fourteenth Amendment, the Court reasoned:

> Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held

[2] To preserve the issue on appeal, Sanchez renewed his motion at the beginning of the carjacking trial, which occurred upon conclusion of the hit and run trial. The renewal of the motion was solely "for the record" and is not material to our decision that the initial proffer before both trials began established a particularized need for additional funds to engage the defense expert for trial.

> that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system." To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.

Id. at 77 (internal citations omitted).

The Court in Ake applied a three-part test to determine whether the defendant in that case should have been provided the services of a state-funded psychiatrist to assist with the insanity defense he raised: 1) the defendant's private interest in diminishing the risk of erroneous conviction; 2) the state's economic considerations, and 3) the risk of error if the case were to proceed in the absence of the requested assistance. Id. at 78. "When the defendant is able to make . . . a threshold showing to the trial court [that the issue for which he seeks expert assistance] is likely to be a significant factor in his defense" and that he will be prejudiced were the request to be denied, due process requires the appointment of an expert at state expense. Id. at 82-83.

The Virginia Supreme Court applied Ake in Husske v. Commonwealth, 252 Va. 203, 476 S.E.2d 920 (1996), and defined its parameters, stating that neither the decision in Ake nor due process confers the right to receive "[a]ll assistance that a

non-indigent defendant may purchase." Id. at 211, 476 S.E.2d at 925. All that is due, constitutionally, is that an indigent defendant not be denied "an adequate opportunity to present . . . claims fairly within the adversary system." Id. (quoting Ross v. Moffitt, 417 U.S. 600, 612 (1974)).

To warrant the appointment of an expert, the Husske Court also noted that "the indigent defendant . . . must show a particularized need." Id. at 212, 476 S.E.2d at 925. The showing required "'is a flexible one and must be determined on a case-by-case basis.'" Id. at 212, 476 S.E.2d at 925-26 (quoting State v. Mills, 420 S.E.2d 114, 117-19 (N.C. 1992)). "Whether a defendant has made the requisite showing of a particularized need lies within the discretion of the trial court." Lenz v. Commonwealth, 261 Va. 451, 462, 544 S.E.2d 299, 305 (2001) (citing Husske, 252 Va. at 212-13, 476 S.E.2d at 926); accord Hoverter v. Commonwealth, 23 Va. App. 454, 466, 477 S.E.2d 771, 776 (1996).

Numerous Virginia appellate cases address the question of whether a "particularized need" has been established by an indigent defendant. None of the cases establishes a bright-line test for what constitutes a "particularized need." It is in the context of facts found insufficient to satisfy the Ake test that the meaning of the phrase, "particularized need," emerges. Citing Caldwell v. Mississippi, 472 U.S. 320 (1985), for

example, the Court in Husske rejected what it described as "'little more than undeveloped assertions that the requested assistance would be beneficial,'" as insufficient to establish the requisite need. Husske, 252 Va. at 210, 476 S.E.2d at 926 (quoting Caldwell, 472 U.S. at 323 n.1) (emphasis added). In Watkins v. Commonwealth, 229 Va. 469, 331 S.E.2d 422 (1985), the Court found the claim that "'a particular service might be of benefit,'" was insufficient to establish that "'the [requested] service is constitutionally required.'" Id. at 478, 331 S.E.2d at 430 (quoting Ross, 417 U.S. at 616) (emphasis added). In Barnabei v. Commonwealth, 252 Va. 161, 477 S.E.2d 270 (1996), a case decided the same day as Husske, the Court found that the defendant's request for the appointment of a forensic pathologist to rebut the medical examiner's testimony about the rape victim's injuries did not articulate a particularized need because it amounted to, at best "a hope or suspicion that favorable evidence [that the victim's injuries did not necessarily result from force] may be procured." Id. at 171, 477 S.E.2d at 276 (emphasis added). In Hoverter, the defendant predicated his request for an appointed expert on the need "to determine if psychological or mental health mitigation evidence exists," and if so, "to aid him in the development and presentation of such evidence for the sentencing proceeding." Hoverter, 23 Va. App. at 466, 477 S.E.2d at 776 (emphasis added). The Court affirmed the trial court's finding that a

particularized need was not established, noting that Hoverter had made no showing that he suffered from mental illness. Id. at 467, 477 S.E.2d at 777. In short, the indigent defendant's need for an appointed expert at state expense has to be more than hypothetical; the court must be able to conclude that expert assistance relates to an issue which is likely to be material to the defense.

Inherent in this Court's review of whether a defendant has articulated a particularized need for the assistance of an expert is the question of possible prejudice to the defense were the request to be denied. In Hoverter, for example, the defendant showed no prejudice resulted from the non-appointment of an expert to give testimony on prison conditions. Other evidence on the issue had already been admitted, and the Court found that Hoverter failed to show why this other evidence did not adequately address the question. Id. at 466, 477 S.E.2d at 776; see also Ake, 470 U.S. at 78 (finding that a high risk of error exists if the case were to proceed in the absence of the requested assistance); Lenz, 261 Va. at 462, 544 S.E.2d at 305 (finding that, because the expert testimony defendant proffered was available from other witnesses, he suffered no prejudice and the trial was not fundamentally unfair).

We find Sanchez's proffer demonstrated a particularized need in the case and that the expert's proffered testimony was material to Sanchez's defense. Sanchez stated that he needed

the expert's testimony at trial to challenge the DNA analysis performed on blood stains taken from the vehicle that had been involved in the hit-and-run offense. He proffered that the defense expert had found errors in the "way the DNA procedures" were followed by the Commonwealth's expert and that he was prepared to question the scientific validity of the results obtained by the Commonwealth's witness.

The validity of the DNA evidence was material to Sanchez's defense. The trial court's initial appointment of a DNA expert at state expense to assist Sanchez in his evaluation of the Commonwealth's DNA expert's test results reflects that materiality, and the record confirms it. The Commonwealth's DNA results implicated Sanchez as the driver of the car involved in the hit and run offense, constituting significant physical evidence that directly linked Sanchez to the driver's seat of the car at that time. The Commonwealth introduced the DNA evidence in order to establish Sanchez's identity as the carjacker in the instant case. From the DNA evidence, the jury could infer that the perpetrators of the hit-and-run offense and the carjacking were one and the same.[3]

---

[3] Indeed, the Commonwealth made clear throughout the carjacking trial that the DNA evidence was a key element of its theory of the case, namely that Sanchez, as the driver of the car involved in the hit-and-run offense, was also the individual who committed the carjacking. The prosecution continually underscored the relevance of finding Sanchez's blood on the inside of the driver's door to a determination of his identity as the perpetrator of the carjacking two days prior to the

Sanchez's ability to challenge the validity of the Commonwealth's DNA results was truncated by the trial court's denial of the additional funds that Sanchez sought. Sanchez proffered that the results would be challenged based on his expert's conclusions that there were errors in the manner in which the Commonwealth's DNA testing procedures were followed. At trial, on cross-examination, the Commonwealth's expert, Bryan P. Edmonds, testified that he followed office protocol and described the DNA analysis method he used in detail. Edmonds stated the protocol he followed was standard procedure. He further noted that the protocol is accepted within the scientific community. Sanchez had no witness available to challenge the validity of the Commonwealth's evidence. In short, the Commonwealth's expert's testimony was unrebutted, a prejudicial disadvantage foreseen by the Ake Court. Ake, 470 U.S. at 77 ("Without . . . the expert's assistance, the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof . . . . ").

---

accident. In its opening statement, the prosecution stated, "That car turned up two days later, discovered by police wrecked against a tree. Blood was taken from the vehicle . . . and the DNA from that blood matches [Sanchez]." In closing statements, the prosecution stated that Unangst's identification, challenged by the defense, was corroborated "by science, because science also places him in the car . . . [Sanchez's] blood, his DNA, his unique DNA is in that car, indeed in the vicinity of the driver's seat."

Here, Sanchez was "unable because of poverty to parry by his own witnesses the thrusts of those against him." Reilly v. Barry, 166 N.E. 165, 167 (N.Y. 1929). Specifically, he was unable to counter the Commonwealth's evidence and theory that the evidence proved he drove the vehicle involved in the hit-and-run accident and, thus, was the individual who carjacked Unangst two days earlier.

Accordingly, we find that the trial court erroneously denied Sanchez's motion for additional funds to permit his expert to testify at trial and that the denial of the requested funds prejudiced Sanchez and his ability to mount a proper defense to the hit-and-run charge. See Lenz, 261 Va. at 462, 544 S.E.2d at 305.

We now turn to whether the trial court's denial of additional funds for an expert witness was harmless error. Although the issue of harmless error in the Ake context has not specifically been addressed in Virginia, the Fourth Circuit determined that the denial of expert assistance in violation of Ake is trial error subject to harmless error analysis. Tuggle v. Netherland, 79 F.3d 1386, 1392 (4th Cir. 1996).

In Tuggle, the court noted that, "Errors amenable to harmless-error review are trial errors." Id. "Trial error 'occur[s] during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may . . . be

quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." Brecht v. Abramson, 507 U.S. 619, 629 (1993) (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)).[4]

The error identified in this case is a trial error and subject to harmless error analysis. On direct appeal, the harmless error standard for constitutional error is whether the error "was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Under that standard, a constitutional error may not be declared harmless if there is a "reasonable possibility" that the "error contributed to the verdict." Tuggle, 79 F.3d at 1392.

Applying this standard to the case at bar, we find the trial court's error in denying Sanchez's request for additional funds for a DNA expert was harmless. Sanchez sought expert testimony to challenge the Commonwealth's DNA evidence that implicated him as the driver of the Honda Accord at the time of the hit-and-run accident and, thus, by inference, as the perpetrator of the carjacking in this case. However, Sanchez

---

[4] Trial errors may be compared with structural errors, such as the deprivation of the right to counsel, trial by a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, and the denial of the right to a public trial. Fulminante, 499 U.S. at 309-10. Unlike trial errors, structural errors are not amenable to harmless error analysis because they "'infect the entire trial process.'" Tuggle, 79 F.3d at 1391 (quoting Brecht, 507 U.S. at 630). Thus, assessing the impact of structural errors on the trial is impossible. Id.

confessed to the carjacking, describing his actions on the date in question in detail, and corroborating Unangst's testimony identifying him as the carjacker. Moreover, Sanchez's shoe impression, found on the inside of the driver's window, also implicated him as the perpetrator of the carjacking. In light of the overwhelming evidence of Sanchez's guilt, see Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), we hold the error was harmless beyond a reasonable doubt and that there was no "reasonable possibility" that the "error contributed to the verdict." Tuggle, 79 F.3d at 1392.

Accordingly, we affirm the decision of the trial court.

## II. In-Court Identification

Sanchez next challenges the identification testimony of Unangst, on the ground it was tainted by the Commonwealth's comments to Unangst that Sanchez had confessed to the carjacking. He also contends the trial court erred in failing to conduct a full hearing on the motion.[5]

[5] The Commonwealth contends these issues are procedurally barred because Sanchez failed to preserve them below. We agree that Sanchez's contention that the trial court improperly failed to grant him a full hearing on the issue is procedurally barred. The record fails to establish that Sanchez timely objected to the trial court's decision not to grant a full hearing or that he requested a full hearing on the issue. Thus, the issue is barred. Rule 5A:18. However, we find Sanchez properly preserved his challenge to Unangst's identification testimony. On August 31, 2001, Sanchez moved the trial court in limine to exclude any testimony by Unangst in which she identified him as the perpetrator of the carjacking. On September 4, 2001, the first day of the trial, the trial court heard arguments on this motion from both parties and ultimately denied it. Sanchez

Under accepted principles, we apply a two-part test to determine whether an in-court identification must be suppressed. Doan v. Commonwealth, 15 Va. App. 87, 95, 422 S.E.2d 398, 402 (1992). First, the court must determine "whether the identification was unduly suggestive." Id. at 95, 422 S.E.2d at 403. In determining whether this prong of the test has been proved, we examine the totality of the circumstances. Neil v. Biggers, 409 U.S. 188, 199 (1972). If the court resolves that question in the affirmative, the court "'next must determine whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.'" Doan, 15 Va. App. at 95, 422 S.E.2d at 403 (quoting Curtis v. Commonwealth, 11 Va. App. 28, 31, 396 S.E.2d 386, 388 (1990)). In reviewing the "totality of the circumstances" to determine the reliability of the identification, we examine Unangst's opportunity to observe the criminal at the time of the crime, her degree of attention, the accuracy of her prior description of the criminal, the level of certainty she demonstrated at the confrontation, and the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200; see also Doan, 15 Va. App. at 97, 422 S.E.2d at 404.

Upon review of the record, we find that Unangst's identification of Sanchez at trial was not the product of

---

noted his exception to the ruling. We find Sanchez preserved the issue for appeal.

improper suggestive comments by the Commonwealth's attorney. The evidence is uncontradicted that Unangst did not hear or remember any such comments. Logic dictates that no suggestive effect can flow from a statement that was not heard or remembered. Cf. Doan, 15 Va. App. at 96-97, 422 S.E.2d at 403 (finding that, where witness stated Commonwealth's attorney did not tell her where defendant would be sitting at trial, prosecutor's comments could not be deemed "overly suggestive").

Even were we to find Unangst's testimony was tainted by a suggestive comment made by the Commonwealth's attorney, upon review of the evidentiary record relative to the totality of circumstances, we find no error. We find that Unangst's identification testimony was based on a reliable source of information free from taint and independent from any suggestive comments that allegedly were made by the Commonwealth. See McCary v. Commonwealth, 228 Va. 219, 234, 321 S.E.2d 637, 645 (1984). Unangst had adequate opportunity to view her attacker's face; she focused her attention on him as he spoke to her, as he left his car to approach her, and when he grabbed her and began forcing her toward his car as he demanded her car keys. Unangst had twice before positively identified him as one of the carjackers: at Sanchez's preliminary hearing and at the trial of the hit-and-run offense with which he was charged. Her testimony at the carjacking trial was not shown to have changed as a result of any remarks the prosecution allegedly made.

Although Unangst had previously identified another individual as the driver, she retracted that identification and positively and consistently identified Sanchez as the individual who carjacked her car. While Unangst's initial and later descriptions of Sanchez were not entirely consistent with respect to her estimates of Sanchez's height, the presence of facial hair, and any speech accent, her descriptions were essentially accurate. Such factors are for the jury to consider in weighing the accuracy of the in-court identification. McCary, 228 Va. at 234, 321 S.E.2d at 635; see also Fisher, 228 Va. at 299-300, 321 S.E.2d at 204; Hill v. Commonwealth, 2 Va. App. 683, 698, 347 S.E.2d 913, 921 (1986). Accordingly, we find no error in the trial court's admission of Unangst's identification testimony.

III. Conclusion

In conclusion, we find the trial court improperly denied Sanchez's motion for additional funds for an expert witness because Sanchez established a particularized need for the expert and the failure to allot him the funds adversely affected his ability to rebut and challenge the Commonwealth's evidence. However, viewed in the context of the overwhelming evidence of Sanchez's guilt, we find the error was harmless beyond a reasonable doubt. Additionally, we find the trial court's decision to admit Unangst's identification testimony was without

error because the record fails to show that it had been tainted or that it was not reliable.

We affirm Sanchez's conviction.

Affirmed.