COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Bumgardner and Senior Judge Hodges
Argued at Alexandria, Virginia

JASON K. JONES, S/K/A
 JASON KHALID JONES
                                          OPINION BY
v.    Record No. 2642-97-4       JUDGE ROSEMARIE ANNUNZIATA
                                        APRIL 20, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Paul F. Sheridan, Judge

          William B. Moffitt (Henry W. Asbill; Asbill,
          Junkin & Moffitt, on briefs), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     Jason Jones ("appellant") was convicted, upon entry of

Alford guilty pleas, of two counts of robbery and of the use of

a firearm while committing those robberies.  On appeal,

appellant contends the trial court erred in failing to grant his

motion to withdraw his Alford pleas, claiming they were not

voluntarily and intelligently made.  He specifically contends:

(1) he entered the pleas under an honest mistake of material

fact as to the character of the evidence against him, and (2)

his pleas were the product of undue influence based on his

mental state and certain external pressures on him at the time.

Appellant further contends the Commonwealth proffered a

materially false factual basis in support of his Alford pleas,

which led the court to erroneously accept the pleas and find him

guilty.  Alternatively, appellant argues the Commonwealth's proffer, even if accurate, does not support the entry of an Alford plea because it was based on the statement of an accomplice who gave "materially different" accounts of events. Finally, appellant argues that due process considerations required the trial court to permit withdrawal of his pleas. Finding no error, we affirm.

## I.

### BACKGROUND

#### A.  Factual Background

We state the relevant facts in the light most favorable to the Commonwealth.  See McGee v. Commonwealth, 25 Va. App. 193, 196, 487 S.E.2d 259, 260 (1997).  On the evening of October 11, 1996, Sherri Herren drove to the Carlyle Grand Restaurant to celebrate her birthday with some friends.  When the restaurant closed at around 1:00 a.m., Thomas Flatt and Shannon Harman walked Herren to her car, a Lexus, which was parked in a well-lit parking lot behind the establishment.  As the trio approached Herren's car, Herren heard a voice behind her say, "Get on the ground."  Herren turned around and saw two men.  The one who spoke wore a ski mask and dark clothing and pointed a small handgun at Herren.

After repeating his order, Herren and her companions dropped to the ground.  The robbers took Flatt's wallet and

-

Harman's purse and drove away in Herren's car, which contained her purse and other personal items. None of the victims could identify the robbers.

On October 15, 1996, officers of the Arlington County Police Department stopped appellant and Christopher Surratt for an unrelated traffic offense. Surratt, who was driving a car belonging to appellant's mother, attempted to flee when the police asked him for identification. Officers subsequently discovered items taken during the aforementioned robberies in Surratt's possession and the key to Herren's Lexus in the passenger-side door pocket of the car Surratt was driving. During a subsequent police interview, Surratt implicated appellant in the robberies, identifying him as the gunman.

On the same day, police executed a warrant to search appellant's townhouse. During the search, police recovered a number of items taken during the robberies, including bank records in the name of Thomas Flatt, Flatt's driver's license, a Blockbuster video card in the name of Kathleen Flatt, Herren's operator's license, an Exxon credit card in the name of J.L. Herren Associates,[1] and a Keegan Theater business card in Herren's name.

---

[1]Herren's husband owns a business called J.L. Herren Associates.

-

B.  Procedural Background

Appellant was indicted on multiple charges for his participation in the aforementioned robberies.  On March 20, 1997, pursuant to a plea agreement, appellant entered an <u>Alford</u> plea to two counts of robbery and one count of using a firearm in the commission of a felony.  In exchange for his plea, the Commonwealth nolle prossed another count of robbery, carjacking, and a charge of carrying a concealed weapon.  Appellant's plea agreement provides in pertinent part:

> 5.  I do not admit that I committed the crimes to which I am pleading guilty. However, I have talked to my attorney about what might happen if I went to trial and I have decided it is in my interest to accept the prosecutor's offer, to enter into this agreement.
>
>    *       *       *       *       *       *       *
>
> 8.  I understand that I have a right to plead "Not Guilty" to the charge against me, but I want to give up that right and plead guilty instead.  I also understand that when I give up the right to plead "Not Guilty" I am also giving up other rights guaranteed to me by the Constitution of the United States . . . . In particular, I understand that by pleading guilty I give up:
>
>     A.  The right to a speedy and public trial by a jury . . . ;
>
>      *       *       *       *       *       *       *
>
>     C.  The right to see and hear all witnesses against me and the right to cross-examine those witnesses; . . . .

—

    *      *      *      *      *      *      *

17.  I still claim innocence but I freely and voluntarily plead guilty to the crimes described in paragraph 3, above, because I have decided it is in my interest to do so.

Before accepting the three pleas, the trial court questioned appellant regarding his agreement to plead guilty. In pertinent part, the court had the following dialogue with appellant:

THE COURT:  I[t] says in Paragraph Three that you are pleading guilty to two robberies and one use of a firearm. Following that in Five it says you do not admit committing the crimes.  Tell me why you are pleading guilty if you do not admit committing the crimes?

[APPELLANT]:  Because I feel if I went to trial there is enough evidence to convict me and I don't want to take that chance of being convicted by a jury.

THE COURT:  In Paragraph Eighteen it says there is no agreement as to sentence.  You know on the robbery charges you could get life on each one of the two and the use of a firearm you get three years.  You understand each of those sentences.

[APPELLANT]:  Yes, I do.

THE COURT:  You're worried that a jury might convict you and then the jury would impose sentence.

[APPELLANT]:  Yes.

-

The court subsequently found appellant "freely, voluntarily and intelligently, with the aid of good counsel, entered pleas of guilty" and accepted his three pleas.

The Commonwealth proffered a set of facts in support of appellant's guilty pleas.  The court asked appellant whether the Commonwealth's proffered evidence was the evidence he would expect to hear at trial and whether the evidence raised concerns in his mind that he would be convicted by a jury.  Appellant replied in the affirmative to both questions.  Appellant's counsel, Jeffrey Kleger, also indicated that he believed the Commonwealth's proffered evidence would be admitted against appellant at a trial.

The court found appellant guilty of two robberies and of using a firearm in the commission of a felony and scheduled sentencing for June 6, 1997.  On June 2, 1997, appellant, with the assistance of new counsel, filed a Motion to Withdraw Guilty Pleas with the court.  The court's denial of this motion is the subject of this appeal.

II.

WITHDRAWAL OF GUILTY PLEAS

A.  Principles Regarding Guilty Pleas and the Alford Plea

A guilty plea normally consists of both a waiver of constitutional rights and an admission of guilt.

-

> Ordinarily, a judgment of conviction resting
> on a plea of guilty is justified by the
> defendant's admission that he committed the
> crime charged against him and his consent
> that judgment be entered without a trial of
> any kind.  The plea usually subsumes both
> elements . . . even though there is no
> separate, express admission by the defendant
> that he committed the particular acts
> claimed to constitute the crime charged in
> the indictment.

North Carolina v. Alford, 400 U.S. 25, 32 (1970).  Virginia law likewise establishes that a plea of guilty ordinarily subsumes an admission of guilt.  Kibert v. Commonwealth, 216 Va. 660, 665, 222 S.E.2d 790, 793 (1976) ("'[G]enerally no evidence of guilt is required in order to proceed to judgment [upon a plea of guilty], for [the] accused has himself supplied the necessary proof . . . .'" (quoting Hobson v. Youell, 177 Va. 906, 912-13, 15 S.E.2d 76, 78 (1941))).

Among the constitutional rights waived by a guilty plea are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers.  See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Dowell v. Commonwealth, 12 Va. App. 1145, 1148-49, 408 S.E.2d 263, 265 (1991), aff'd en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992). In order to ensure these rights are adequately protected, the trial court must determine whether a defendant's decision to waive them by pleading guilty "represents a voluntary and

-

intelligent choice among the alternative courses of action open to the defendant."  Alford, 400 U.S. at 31.

An admission of guilt, however, is "not a constitutional requisite to the imposition of criminal penalty."  Id. at 37; Smith v. Commonwealth, 27 Va. App. 357, 361-62, 499 S.E.2d 11, 13 (1998).  Courts may find that an accused has voluntarily and intelligently entered a guilty plea even though he or she alleges innocence.  Id. ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").  Such a plea is known as an Alford plea.

Although Virginia does not ordinarily require the introduction of evidence to sustain a conviction based upon a plea of guilty,[2] in order to ensure that a defendant has pled guilty freely and intelligently, the trial court should not accept an Alford plea unless it finds that a factual basis supporting guilt exists.  Alford, 400 U.S. at 38 n.10 ("Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice,

---

[2]See Kibert, 216 Va. at 665, 222 S.E.2d at 793.  See also Boykin, 395 U.S. at 243 ("[A guilty plea] is itself a conviction; nothing remains but to give judgment and determine punishment."); Peyton v. King, 210 Va. 194, 196, 169 S.E.2d 569, 571 (1969) (holding that a voluntary and intelligent plea of guilty is a self-supplied conviction).

-

. . . pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea . . . .").

### B. Withdrawal of Guilty Pleas in Virginia

Code § 19.2-296 allows a defendant to withdraw a guilty plea before sentence is imposed. "'Whether or not an accused should be allowed to withdraw a plea of guilty for the purpose of submitting a not guilty plea is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" Hoverter v. Commonwealth, 23 Va. App. 454, 464, 477 S.E.2d 771, 775 (1996) (quoting Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949)). The court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it. See id. at 465, 477 S.E.2d at 776.

Rule 3A:8(b) provides that "[a] circuit court shall not accept a plea of guilty . . . without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea." As such, a motion to withdraw a plea should be granted "if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and

-

would not otherwise have been made." Hoverter, 23 Va. App. at 464, 477 S.E.2d at 775 (quoting Parris, 189 Va. at 324, 52 S.E.2d at 873). Determining whether a court erred in declining to allow withdrawal of a guilty plea "requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he [or she] pleaded to the charge." Parris, 189 Va. at 322, 52 S.E.2d at 872.

In this case, appellant does not allege purposeful misrepresentation or nondisclosure of evidence by the Commonwealth. Instead, appellant contends the trial court should have allowed him to withdraw his guilty pleas because: (1) personal circumstances exerted undue influence on his ability to enter an intelligent and voluntary plea, (2) he made an honest mistake of material fact as to the nature of the evidence against him, and (3) the Commonwealth made an inaccurate proffer of facts leading the trial court to conclude erroneously that there was a sufficient factual basis for his Alford pleas. Appellant's contentions are not supported by the record.

### 1. Alleged Undue Influence

Prior to accepting appellant's pleas, the trial court thoroughly examined appellant concerning his decision to plead guilty. The court specifically asked appellant why, if he believed in his innocence, he was pleading guilty to the instant

-

charges, which carried the potential of multiple life sentences. Appellant stated he did not want to risk being convicted by a jury.

Upon appellant's motion to withdraw his Alford pleas, the trial court held a hearing on June 6, 1997. Jeffrey Kleger, appellant's counsel prior to the motion to withdraw, testified to having multiple discussions with appellant regarding whether he should plead guilty or go to trial on the instant indictments.[3] Kleger knew appellant was taking anti-depressant medication at the time but testified appellant participated in their discussions, appeared to be alert, and seemed to understand his plea options notwithstanding the medication.

Dr. Susan Fiester, a forensic psychiatrist, testified that appellant suffered from "unipolar depression, which is a straightforward depressed mood," when he pled guilty to the

_____

[3]Kleger stated in pertinent part, "I explained to him the various options. I gave him my appraisal of the case strengths and weaknesses. And I made my recommendation. And I ultimately left it to him as to what he wanted to do." Kleger later elaborated:

> I told him that he had the option of going
> to trial and testifying, he had the option
> of going to trial and not testifying, he had
> the option of pleading guilty before a judge
> with a recommendation from the prosecutor,
> he had the option of pleading guilty without
> a recommendation from the prosecutor, and he
> had the right to deny his guilt and enter an
> Alford plea.

-

instant offenses. Dr. Fiester found that appellant manifested many of the symptoms of such a depression, including a "depressed mood, inability to take pleasure in things, difficulty with [sleeping]," feelings of worthlessness, and blaming himself for things beyond his responsibility. According to Fiester, appellant's condition "would have made him more vulnerable to -- to taking [a guilty plea] even if he felt he were innocent." Dr. Fiester also testified that appellant's personal circumstances pressured him into pleading guilty in order to resolve the charges as quickly as possible.[4] Given such pressures, Dr. Fiester opined that appellant's pleas were "very much a result of other people's influence." Dr. Fiester admitted, however, she was "not saying that appellant wasn't capable of understanding what he was doing," but only that appellant was not functioning at a "normal nondepressed level of function."

Noting that appellant's evidence failed to establish appellant's lack of capacity to make decisions freely and intelligently, the trial court rejected appellant's claim that

---

[4]According to Dr. Fiester, these circumstances included appellant's perception that he was a failure, appellant's desire to avoid creating additional conflict between his divorced parents, and the fact that his attorney was a family friend. Fiester testified, "I think those were all factors that led him to in part try to get a resolution to this matter, feel some pressure to get a resolution to the matter as quickly as possible without going on to really fight it."

-

the undue influence of his depression and personal circumstances induced him to enter his <u>Alford</u> pleas.[5]  We conclude the court's ruling was not plainly wrong or without evidence to support it. <u>See</u> <u>Hoverter</u>, 23 Va. App. at 465, 477 S.E.2d at 776.

When determining whether the existence of undue influence is sufficient to merit the withdrawal of a defendant's guilty plea, we focus on whether that influence negated the defendant's ability to enter his or her plea freely and voluntarily.  In <u>Parris</u>, the Supreme Court of Virginia endorsed the following statement of the circumstances under which a trial court should allow a plea of guilty to be withdrawn and substituted for one of not guilty:

> The plea of guilty to a serious criminal charge should be freely and voluntarily made, and entered by the accused, without a semblance of coercion and without fear or duress of any kind, and the accused should be permitted to withdraw a plea of guilty entered unadvisedly when application therefor is duly made in good faith and sustained by proofs, and a proper offer is made to go to trial on a plea of not guilty.

<u>Parris</u>, 189 Va. at 325-26, 52 S.E.2d at 874 (quoting Percival W. Viesselman, <u>Abbott's Criminal Trial Practice</u> § 118 (4th ed. 1939)).

---

[5]The court stated in pertinent part, "nobody has told me the defendant's actual perception of facts, actual perception of expected evidence, actual reliance on any particular statement by counsel, or actual surrender to the coercive powers of family or counsel."

In this case, Kleger's testimony regarding appellant's participation in their discussions and appellant's understanding of his plea alternatives, the terms of appellant's plea agreement, and the court's questioning of appellant at the plea hearing support the court's finding that appellant had not "surrender[ed] to the coercive powers of family or counsel." Further, although opining that appellant's pleas were the result of other people's influence, Dr. Fiester could not conclude that "appellant wasn't capable of understanding what he was doing." To the extent that Fiester's testimony supported a finding of undue influence, the trial court's finding as to the weight to be given this evidence is entitled to deference, particularly in light of the court's examination of appellant at the time it accepted his pleas. See Hoverter, 23 Va. App. at 465, 477 S.E.2d at 776. Thus, the evidence supports the conclusion that appellant entered his pleas freely and voluntarily.

### 2. Alleged Mistake of Material Fact

We also reject appellant's contention that he acted under a mistake of fact at the time he entered his guilty pleas. Appellant bases this claim on certain inconsistencies between the statement Surratt initially gave to police and testimony Surratt gave at his subsequent plea hearing.

In his initial statement to the police, Surratt stated that he and appellant had robbed three people of personal items, that

-

appellant used a pellet gun to effectuate the robbery, that they stole a Lexus belonging to one of the victims, and that he drove the Lexus to appellant's townhouse where they disposed of the fruits of their crime.  Surratt only implicated appellant and did not state that anyone else had participated in the robbery. Although police found the key to Herren's Lexus in the car Surratt was driving, Surratt could not explain how the key came to be there.  According to Surratt, he left the key in the Lexus' ignition after parking it near appellant's house on the night of the robbery.  Surratt suggested appellant, who was with Surratt at the time officers stopped him and whose mother owned the car Surratt was driving, might have returned to the Lexus and taken the key later.

Pursuant to a plea agreement, Surratt subsequently pled guilty to carjacking, use of a firearm in the commission of a felony, and three counts of robbery.  At his plea hearing on February 25, 1997, Surratt testified that Juwan Clark, his roommate, drove appellant and him to the Carlyle Grand Restaurant, that he and appellant robbed the victims, that appellant used a small handgun during the robbery, that he drove one of the victim's Lexus to appellant's house, that they divided the proceeds of the robbery at appellant's house, and that appellant kept the keys to the stolen Lexus.  Surratt testified he had not previously mentioned Clark's involvement in

-

the robberies when questioned by police because he "didn't see no reason to. I didn't think there was no need to."[6]

It is undisputed that Surratt's statements were inconsistent in some respects and, although relatively minor in nature, could have provided appellant with an opportunity to attack Surratt's credibility at a future trial.[7] It is equally clear, however, that counsel informed appellant of the inconsistencies in Surratt's statements, apprised him of his opportunity to attack Surratt's credibility, and discussed his plea alternatives on multiple occasions. At the time Kleger represented appellant, Kleger was aware of Surratt's testimony at his plea hearing and of the inconsistencies that existed between the testimony and Surratt's initial police interview. After appellant moved to withdraw his pleas with the assistance of new counsel, Kleger testified that he fully discussed methods of attacking Surratt's credibility with appellant prior to the entry of appellant's pleas. As previously established,

---

[6]Indeed, according to Herren's account, only two robbers effectuated the robberies.

[7]Comparing Surratt's statements, the following discrepancies exist: (1) Surratt initially stated that he left the keys to the stolen Lexus in the ignition and later stated at his plea hearing that appellant kept the keys to the Lexus, (2) Surratt failed to implicate a second accomplice, Juwan Clark, in his initial statement to police, and (3) Surratt did not mention at his plea hearing that the gun appellant brandished during the robberies was a pellet gun.

-

appellant participated in these discussions with counsel and appeared alert. Thus, the record fails to support appellant's argument that he entered his pleas based on a mistake of material fact.

Further, as evidenced by the terms of his plea agreement, appellant waived his right to confront and cross-examine Surratt upon deciding that guilty pleas were in his best interest. Appellant knew about the inconsistencies in Surratt's statements and was advised by counsel of his right to confront and cross-examine the witnesses against him. Armed with this knowledge, appellant nevertheless stated in his plea agreement that, in pleading guilty, he understood that he relinquished his right to confront the witnesses against him. See Allen v. Commonwealth, 27 Va. App. 726, 730-31, 501 S.E.2d 441, 443 (1998) (stating that one who voluntarily and intelligently pleads guilty waives the constitutional right to confront his or her accusers).

Based on the foregoing, we find the trial court did not abuse its discretion in rejecting appellant's arguments that his pleas were the product of a mistake of material fact or undue influence.

3. Alleged Proffer of Materially False Facts

Appellant further contends the trial court should have granted his motion to withdraw his guilty pleas because the

-

Commonwealth proffered an inaccurate set of supporting facts at his plea hearing. See Alford, 400 U.S. at 38 n.10 (stating that, in order to insure a plea has been intelligently made, a court should not accept a guilty plea when accompanied by a claim of innocence unless there is a factual basis for the plea). Appellant argues, "The materially false proffer resulted in the trial court's misperception of the factual basis for the Alford pleas, thereby invalidating those pleas." This argument is unsupported by the evidence and by the events at appellant's plea hearing.

The parties agree the transcription of the Commonwealth's proffer in the record inaccurately sets forth the facts of this case. Indeed, the proffer transcribed in the record is inconsistent with the testimony adduced at appellant's preliminary hearing and with the statements made by Surratt in the following respects: (1) the transcription states that appellant, rather than Surratt, attempted to flee from police when asked for identification; (2) the transcription states that appellant, rather than Surratt, told police of the location of the Lexus and presence of stolen items in appellant's bedroom; and (3) the transcription states that the victims were able to positively identify appellant. The parties do not agree, however, on whether the transcription in the record portrays what the Commonwealth actually proffered to the trial court.

-

At the June 6, 1997 hearing on appellant's motion to withdraw, the Commonwealth contended, as it does on appeal, that it proffered an accurate set of facts, but that the court reporter inaccurately transcribed its proffer into the record. To this end, the Commonwealth presented two witnesses who testified the transcription did not accurately depict the Commonwealth's proffer at appellant's plea hearing.

Andrew Parker, the prosecutor at appellant's plea hearing, denied making the factual proffer transcribed in the record. Parker testified that he used a prepared statement of facts, introduced as Commonwealth's Exhibit A, to make his proffer and that he read the statement nearly verbatim at the plea hearing. Exhibit A and the transcription of the proffer at appellant's plea hearing are similar in most respects. The exhibit, however, does not contain the above-noted inaccuracies in the transcription and is otherwise in accord with the facts contained in the record as a whole.

Jeffrey Kleger also testified that portions of the proffer transcribed in the record were not "a fair and accurate transcription by the court reporter of what transpired in this courtroom." Kleger testified the prosecutor gave him a copy of Exhibit A prior to appellant's hearing and the prosecutor

-

proffered this statement verbatim after Jones entered his Alford pleas.[8]

In addressing appellant's motion to withdraw, the court agreed there were inaccuracies in the transcription. As to the Commonwealth's purported proffer that appellant led police to the stolen Lexus and stolen items in his bedroom, the court stated, "I have no memory at all of this defendant ever claiming anything but that he wasn't guilty." The court also noted the record inaccurately reported a question it purportedly asked appellant after the Commonwealth gave its proffer. According to the record, the court asked appellant, "Do you believe they could get that in evidence?" The court noted it would not have asked this question as the question is inconsistent with the court's standard procedure in Alford plea situations. While the court did not explicitly decide the question, the record supports the conclusion that it implicitly determined the transcription did not accurately reflect the factual basis in support of appellant's guilt as proffered by the Commonwealth.

We further note that, in response to the court's questioning at appellant's plea hearing, both appellant and Kleger confirmed the factual accuracy of the Commonwealth's

---

[8]Kleger stated, "The paper that I'm holding in my hand labeled Commonwealth's Exhibit A without question was read by Mr. Parker into the record when [the judge] requested the Commonwealth's proffer of facts."

-

proffer.  Immediately after the Commonwealth proffered its evidence, Kleger stated he believed such evidence could be admitted at trial.  Appellant similarly stated the Commonwealth's proffer was the evidence he expected to hear at his trial.

According to the Code of Virginia, "[t]he transcript in any case certified by the reporter or other individual designated to report and record [a] trial shall be deemed prima facie a correct statement of the evidence and incidents of trial."  Code § 19.2-165.  Notwithstanding the presumption of accuracy afforded by the Code, we find the evidence is sufficient to conclude the record inaccurately represents the Commonwealth's proffer and to further conclude the Commonwealth proffered a factual basis in support of appellant's <u>Alford</u> pleas that accurately reflects the facts of this case.  Thus, we find no error in the trial court's denial of appellant's motion to withdraw his pleas.

Appellant also contends the Commonwealth's proffer was "materially false" because it was based on Surratt's statements and that Surratt had given "materially different" versions of events.  We find no merit in this argument.

Although Surratt's two statements contain some inconsistencies, they are insignificant.  In substance, both statements incriminate appellant in the commission of several

-

robberies and in the use of a firearm during those robberies. Both statements establish that appellant and Surratt robbed three people of personal items, that appellant used a handgun to effectuate the robberies, that the robbers drove away in a Lexus belonging to one of the victims, and that the robbers drove to appellant's house where they divided up the fruits of their robbery. Moreover, during argument on the motion to withdraw, appellant's counsel conceded that Surratt could not have been disqualified as a matter of law from testifying, agreeing with the court that Surratt's inconsistent statements "would always be a credibility question and a question of fact" for the trier of fact to resolve. Thus, the trial court properly rejected appellant's argument that the differences between Surratt's statements required the court to allow withdrawal of his Alford pleas.

### III.  DUE PROCESS ARGUMENT

Appellant also argues constitutional due process requires the withdrawal of his pleas. This argument was not properly preserved for our consideration on appeal. Appellant did not allege a violation of due process rights before the trial court and he is barred from raising the issue here. See Rule 5A:18; Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994); Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992). Finding no justification to invoke the ends of

-

justice exception to Rule 5A:18, we decline to apply the exception to the Rule's general bar and to address appellant's argument for the first time on appeal.

For the foregoing reasons, we find no error in the trial court's conviction of appellant based on his <u>Alford</u> pleas. The evidence supports the conclusion the court heard an accurate factual basis for appellant's pleas and properly determined that appellant entered his pleas voluntarily and intelligently.

<u>Affirmed.</u>