COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Clements
Argued at Richmond, Virginia


DONNIE WAYNE BOWMAN

                                        MEMORANDUM OPINION* BY
v.    Record No. 0952-00-2            JUDGE JAMES W. BENTON, JR.
                                           AUGUST 14, 2001
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                      William L. Wellons, Judge

              J. William Watson, Jr. (Watson & Nelson,
              P.C., on brief), for appellant.

              Robert H. Anderson, III, Senior Assistant
              Attorney General (Mark L. Earley, Attorney
              General, on brief), for appellee.


     The sole issue raised by this appeal is whether the trial

judge abused his discretion when he denied Donnie Wayne Bowman's

post-sentence motion to withdraw his guilty pleas.  We affirm the

judgment.

                                I.

     The grand jury indicted Bowman for attempting to commit

capital murder of a law enforcement officer, using a firearm while

attempting to commit capital murder, and possessing a firearm

after having been convicted of a felony.  At Bowman's jury trial

the evidence proved that on December 7, 1998, Bowman twice

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

telephoned Barbara Cunningham, a child protective service worker in West Virginia, and asked to speak to his wife. When Cunningham told Bowman that charges were pending against him in West Virginia, Bowman told Cunningham he was coming to West Virginia "fully dressed," that he had a shotgun, that he was not going to go back to jail, and that he would "shoot any police officer that [got] in [his] way until they shoot [him]."

At 1:40 a.m. the following day, South Boston Police Officer Fletcher Daniels approached a car on the shoulder of a highway and saw Bowman inside. After Bowman told Daniels that he had no fuel, Daniels radioed for the assistance of another officer because Bowman was "acting strange." When Officer Lovelace arrived at the scene, Bowman "racked his 12-gauge [shotgun] and pointed it at [Lovelace]." Lovelace drew his weapon, yelled for Daniels to get away from Bowman's car, and ordered Bowman to drop the shotgun. Bowman repeatedly told Lovelace to move away and said the only way he would leave his car was with the shotgun in Lovelace's mouth.

Both officers retreated to their vehicles and relayed the situation to their dispatcher. As other police officers arrived, Bowman appeared agitated and was crying. He told the officers he did not want to hurt anyone but himself. After three hours, during which the officers sought to persuade Bowman to leave the car, Bowman suddenly fired his shotgun through the roof of his car. About an hour later, Bowman fired the shotgun through the door of his car towards the pavement. One officer testified that

-

after the second shot he heard pellets bouncing off of the guardrail less than three feet from him and he believed Bowman was shooting at him.  Another officer testified that when Bowman shot the second time, he "could see the smoke and dust and there were particles striking the shield that [he] was behind."  The assembled officers then shot at Bowman's car.  When the officers stopped firing at Bowman's car, the officer in charge began speaking with Bowman and eventually persuaded Bowman to exit his car and surrender.

At the close of the Commonwealth's evidence, Bowman's attorney argued that the evidence failed to prove a specific intent to kill.  The judge overruled the motion to strike the evidence.  Bowman's attorney then presented the testimony of a forensic examiner, who testified that one of Bowman's shots discharged into the ceiling of his car and exited through the car's roof.  Bowman's other shot went into the driver's door of the car and exited the bottom of the door at a downward angle.  At the conclusion of this testimony, Bowman's attorney rested his case and renewed his motion to strike the evidence.  He again argued that the evidence failed to prove a specific intent to kill and, further, that the evidence did not exclude an accidental discharge of the shotgun.  The trial judge observed that the evidence indicated "pellets or particles [from the shotgun] . . . went into the direction of two officers," that Bowman's statements tended to prove his intent, and that the evidence was sufficient

-

for the jury to consider.  The judge overruled the motion to strike and recessed the proceedings to review jury instructions.

While the judge was reviewing jury instructions, the prosecutor and Bowman's attorney conferred about a plea agreement. Based on their discussions, a plea agreement was prepared and presented to Bowman by his counsel.  Bowman signed it, agreeing to plead guilty to an amended charge of attempted malicious wounding of a law enforcement officer, an amended charge of use of a firearm while attempting to commit malicious wounding of a law enforcement officer, and the original charge of possessing a firearm after a felony conviction.  The plea agreement indicated that Bowman's attorney had explained to him the particulars of the agreement and that Bowman had entered into the plea agreement freely and voluntarily.

Before accepting the plea agreement, the judge made extensive inquiries of Bowman.  He asked Bowman if he had conferred with his attorney, if his attorney explained the nature of the pleas he was entering into, if he was "freely and voluntarily" entering pleas of guilty to the charges, if he understood his pleas would waive various constitutional rights, if he had been forced or threatened into entering the plea, if his attorney explained the maximum punishment that could be imposed and if he was satisfied with the services rendered by his attorney.  Bowman answered affirmatively to all of these questions and others posed by the judge.  Bowman's attorney also said the following:

-

> [The agreement] reflects . . . [a] verbal
> agreement we had reached in which Mr. Bowman
> had agreed to as well. When I received the
> written plea agreement and I met in the back
> room with Mr. Bowman and we went over that
> together and he was in agreement with that
> and I was in agreement as well. We both
> signed it and I believe that he understands
> it fully as do I.

The judge accepted the plea agreement, which contained "no agreement as to any sentence recommendation," and he granted the Commonwealth's motion to dismiss the two misdemeanor charges of obstruction of justice and brandishing a firearm. The agreement is dated December 9, 1999, the date of the trial.

The sentencing hearing occurred nine weeks later on February 29, 2000. Before sentencing, Bowman "apologize[d] to the town of South Boston and the County of Halifax," said he "was completely wrong," and made other statements of contrition. The judge sentenced Bowman to a total of sixteen years in prison and suspended eleven years of that sentence upon specified conditions.

A week later, Bowman filed a pro se motion to withdraw his guilty plea and to vacate the sentence. In part, he alleged that his trial attorney rendered him ineffective assistance, did not allow him to read the agreement, did not fully advise him of the nature of the agreement, advised him that he would serve only three years, and did not call as witnesses persons Bowman wanted to testify. At the evidentiary hearing, Bowman's trial attorney testified, however, that he had interviewed several

-

potential witnesses prior to trial and had decided their testimony was damaging to Bowman's case. For example, he indicated Bowman had wanted to use testimony of relatives who heard Bowman talk of shooting police officers.

Bowman's trial attorney also testified that he believed the evidence at trial had "gone fairly well" and that he told Bowman he believed Bowman had a reasonable chance the jury would find him not guilty of attempted capital murder but that, if the jury convicted him, a conviction would carry a minimum twenty-year sentence. In any event, he told Bowman he likely faced a conviction and prison sentence on the firearm charge. He advised Bowman that under the plea agreement he faced a maximum sentence of eighteen years, a minimum sentence of three years, and that his opinion was that Bowman would receive a sentence greater than three years. He recommended that Bowman take the plea agreement.

Bowman's trial attorney testified that when he initially explained the plea agreement and his view of the case, Bowman was willing to accept the plea agreement. At Bowman's request, he asked Sherry Kindler, who had been working as Bowman's therapist for the past year, and John Laroo, a long-time friend of Bowman's, to talk to Bowman. He testified that, after he left the room to confer with the prosecutor and while Kindler and Laroo were talking to Bowman, Bowman had an angry, verbal exchange with a West Virginia social services worker. Bowman

-

became irrational and told Kindler he was not going to accept the deal. Bowman's trial attorney became concerned about Bowman's ability to make an informed decision at that point because Bowman was basing his decision on a fit of anger brought on by what the social services worker had said, and not basing it on what had transpired in the courtroom. After he calmed Bowman, he reviewed the agreement with Bowman. He testified that he felt Bowman had calmed and was making a rational decision when he signed the agreement.

Bowman's attorney also testified that prior to sentencing Bowman mentioned the possibility of seeking to withdraw the plea. He testified, however, that when he "explained to [Bowman] that it meant that he could reface serious charges[, Bowman] decided to not do that and go with sentencing." Prior to sentencing, he told Bowman that he felt that there had probably been a 70% chance of that jury finding him not guilty. He testified, however, that he based these odds on information he received about a juror who had spoken to one of Bowman's family members after the trial.

According to Kindler, Bowman became agitated by the West Virginia social worker statement that "social services had removed his children and put them in foster care." She said Bowman became angry and "shut down." Although Kindler said that the plea agreement seemed like a good deal to her and that she recommended Bowman take the deal, Kindler admitted that she was

-

not present at the trial, had not heard the evidence, and relied solely upon Bowman's attorney's opinion in advising Bowman to take the deal.  Kindler indicated that in the year or so that she had been treating Bowman he had been relying on her advice as a mental health expert and they had been working on a trust issue.  Kindler said she told Bowman it was her professional opinion that he should accept the plea agreement, but that it was up to him and he needed to make his own decision.

Laroo also testified that Bowman was angry and irrational after the exchange with the social services worker.  According to Laroo, the exchange caused Bowman to change his mind about accepting the plea agreement.  Laroo "felt it was advisable to get [Bowman] calm and consider this thing, and that was not easy to do."  He said Bowman wanted to go to trial, take the stand, and tell the judge what the social services worker had said.  Laroo also indicated that after Bowman became calm he "sort of reluctantly" signed the plea agreement.

Bowman testified that he repeatedly told his attorney he did not want to accept the plea agreement.  He said Kindler's intervention caused him to accept the plea agreement and to feel he was "boxed in."  He said his attorney told him to take it or he would receive life in prison.  Further, Bowman claims that he did not understand the plea agreement, that he had not taken his medicine on the day he was considering the plea agreement, and that he lied to the judge when he responded affirmatively to the

-

judge's questions pertaining to the plea agreement.  Bowman said that he lied in order to get out of the courtroom.

In denying the motion, the trial judge found that Bowman had not expressed any reluctance to accept the plea, that the evidence did not establish that the plea was not entered into freely and voluntarily, that Bowman gave no indication at trial that he did not understand the plea agreement, and that no mistake of fact or fraud existed.  The judge also said that the evidence indicated that Bowman's trial attorney had spent a "great deal of time in preparation for the trial of the case" and fully explained the agreement to Bowman.  Although the trial judge found that Bowman "vacillated" over whether to sign the agreement, he also found that Bowman fully understood it.  The judge also pointed out that Bowman had a significant amount of time in which to consider his plea options and that the sentence was a factor in Bowman's decision to file the motion.

## II.

Code § 19.2-296 provides as follows:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Applying this statute we have held as follows:

> "'Whether or not an accused should be allowed to withdraw a plea of guilty for the

-

> purpose of submitting a not guilty plea is a
> matter that rests within the sound
> discretion of the trial court and is to be
> determined by the facts and circumstances of
> each case.'"  The court's finding as to the
> credibility of witnesses and the weight of
> the evidence in support of a motion to
> withdraw a guilty plea will not be disturbed
> unless plainly wrong or without evidence to
> support it.

Jones v. Commonwealth, 29 Va. App. 503, 511-12, 513 S.E.2d 431, 435 (1999) (citations omitted).  We have also held that "[d]etermining whether a court erred in declining to allow withdrawal of a guilty plea 'requires an examination of the circumstances confronting [the] accused immediately prior to and at the time [the accused] pleaded to the charge.'"  Id. at 512, 513 S.E.2d at 436 (citation omitted).

Bowman essentially contends that his guilty plea was the product of coercion and undue influence.  He claims that his trial counsel, Kindler, and Laroo prevailed on him to plead guilty despite his own wishes.  As in Jones, however, the trial judge thoroughly examined Bowman before accepting the guilty pleas.  Although Bowman later claimed he was lying when he said that he entered the pleas freely and voluntarily and that he understood the agreement, the trial judge chose to believe his earlier assertions.  The judge also believed that Bowman was given a full explanation of the agreement and of the exposure he faced by having the jury consider the evidence.

-

The evidence that Bowman produced at the evidentiary hearing does not compel us to overturn these findings. In fact, testimony at the hearing indicated that Bowman initially discussed the agreement with his attorney and accepted it. Later, Bowman became upset over his confrontation with the social worker about his children. The evidence showed that Bowman's discussions with his friends apparently related more to his reaction to the social worker and their efforts to refocus him on the agreement that he had before him.

In short, the trial judge's findings were not plainly wrong or without evidence to support them. The weight that the trial judge accorded to Bowman's differing testimony and that of the other witnesses was within his discretion. The record contains sufficient evidence that Bowman's plea was "without semblance of coercion and without fear or duress of any kind." Parris v. Commonwealth, 189 Va. 321, 325, 52 S.E.2d 872, 874 (1949).

Although Bowman has asked to withdraw his guilty pleas after sentencing, the evidence before the trial judge did not establish a "manifest injustice" resulting from the circumstances surrounding the plea agreement. Code § 19.2-296. The trial judge could find on the record that Bowman's motion was prompted by his disappointment in the sentence that he received. As the judge found, Bowman had two months between re-arraignment and sentencing to ask to withdraw the guilty pleas. His failure to act earlier is evidence of a settled

-

commitment to plead guilty.  We hold, therefore, that the trial judge did not abuse his discretion by denying Bowman the opportunity to withdraw his guilty pleas and that the record fails to establish any manifest injustice.  We affirm the judgment.

<u>Affirmed.</u>