GREGORY, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority’s recitation of the standard of review that governs this case. See ante at 130. “[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable.” Major League Baseball Players Assoc. v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (quotations and citations omitted). The majority’s application of this standard, however, is mystifying. Here, the arbitrator was not even “arguably” interpreting the contract. To be sure, the arbitrator’s decision purports to interpret the contract, and the decision certainly references the contract. But that cannot be enough, otherwise any review would be effectively foreclosed so long as the arbitrator did not *135 openly flout the contract. Our review is not that narrow.[1]
I.
The proper resolution of this case depends on an understanding of the basic mechanics of the contract and the criminal plea process. Under the contract, “gross misconduct” is “just and sufficient cause” for dismissal. There is no room for additional requirements. Other circumstances may or may not amount to “just and sufficient cause,” but “gross misconduct” always does. The termination clause states:
There shall be no dismissals except for just and sufficient cause, which shall include but not be confined to: reduction of force, willful neglect of duty, gross misconduct and incompetency.
J.A. 300. If “just and sufficient cause” exists, then Media General has a contractual right to terminate employment. Whether the arbitrator thinks termination is the just result — in any sense that un-tethers the term from “gross misconduct” — is irrelevant.
Regarding the plea process, when an individual pleads guilty to a felony, he or she is necessarily admitting to conduct that would support a felony conviction.[2] Jones v. Commonwealth, 29 Va.App. 503, 513 S.E.2d 431, 510 (1999) (“A guilty plea normally consists of both a waiver of constitutional rights and an admission of guilt. Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant’s admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements ... even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment.”). Ms. Mastro-paolo pleaded guilty to a felony. She was convicted of a felony. The conviction was later reduced to a misdemeanor. But she has never asserted that her conduct did not support a felony conviction. By pleading guilty to a felony, she has clearly admitted that she engaged in felonious conduct. The later reduction in the conviction was merely a determination that Ms. Mas-tropaolo was not justly deserving of a felony conviction or the criminal punishment that would follow from such a conviction.
II.
With this background in mind, I turn to the letter of June 1, 1999, in which Media General terminated Ms. Mastropaolo’s employment. The asserted reason for her dismissal was her “guilty plea to a felony charge[.]” The majority is correct that the letter did not mention the specific conduct underlying the criminal charges. It is readily apparent why this is so. Rather than accuse Ms. Mastropalo of specific conduct which may or may not turn out to be true in every significant detail, Media General made the blanket assertion that *136 all felony conduct is “gross misconduct” as defined by the contract. That way, disputes regarding the minutiae of what did or did not happen were avoided. Media General simply tied its decision to Ms. Mastropaolo’s admission of guilt.
As a result of Media General’s reliance on the felony plea, only one issue remained for the arbitrator: Does a felony plea (and the attendant admission of guilt) constitute “gross misconduct?” I suppose reasonable people might disagree on that question. But everyone must agree that if the answer to that question is yes, then the arbitrator’s decision is flatly inconsistent with the contract. All one need do is read the contract to see that no other interpretation is even plausible: “[J]ust and sufficient cause ... shall include ... gross misconduct.” The arbitrator, whose view is the one that matters, directly answered the question. He stated: “[E]ven though grievant’s plea of guilty to a felony was formally accurate as a charge of ‘gross misconduct’ as of June 1, it cannot rise in light of all circumstances of this case to ‘just and sufficient cause’ for grievant’s discharge.” J.A. 411. This statement is the only significant mention of “gross misconduct” in his opinion, and should have ended the arbitration, for there was nothing left for the arbitrator to do but give effect to the plain language of the contract. United Paperworkers Int’l Union v. Mis-co, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (“The arbitrator may not ignore the plain language of the con-tráctil]”); Delta Queen Steamboat Co. v. District 2, Marine Engineers Assoc., 889 F.2d 599, 604 (5th Cir.1989) (“If a collective bargaining agreement defines ‘proper cause’ to include a nonexhaustive fist of offenses, an arbitrator cannot ignore the natural consequences of his finding that a listed offense was committed.”); Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int’l Union, 76 F.3d 606, 610 (4th Cir.1996).
The arbitrator’s analysis, however, went far beyond his finding of “gross misconduct.” .The arbitrator’s stated reason for not finding in favor of Media General was that “in light of all the circumstances” there was not “just and sufficient cause” for Ms. Mastropaolo’s discharge. It was at this point — in the slip from “gross misconduct” to “just and sufficient cause”— that the arbitrator let himself loose from the contract. The arbitrator’s reasoning, although textually hooked to the contract, inserted his own notions of “industrial justice” into the case. Garvey, 532 U.S. at 509, 121 S.Ct. 1724. He accomplished this by interpreting “just and sufficient cause” to require more than “gross misconduct.” So much is apparent from his conclusion that the gross misconduct did not “rise to the level” of just and sufficient cause. As noted at the outset, this was an impermissible interpretation. In fact, it was not an interpretation at all. United States Postal Service v. American Postal Workers Union, 204 F.3d 523, 525 (4th Cir.2000) (“Because the arbitrator completely rewrote the collective bargaining agreement ..., we affirm the district court’s judgment [vacating the award].”).
The arbitrator made several findings to support his conclusion that Ms. Mastropao-lo did not deserve the punishment of dismissal. In addition to the later reduction of Ms. Mastropaolo’s conviction, the arbitrator considered other factors:
The upshot of all that was that it counted in the Arbitrator’s assessment of all evidence and arguments here that griev-ant had twenty-five years of excellent service for this newspaper, that this incident was totally out of character with that long and excellent service, that credible evidence supported the view that grievant’s depression and impulse- *137 control problems very likely had caused this and that those problems had been dealt with satisfactorily over the twelve years of her past psychiatric and medication treatment by her psychiatrist, so that, with her present treatment regimen, it was not at all likely to occur again, and that the evidence, aside from conjecture, of significant harm to the Newspaper’s reputation in the public eye was not sufficient to prohibit her returning to work, especially since there was no newspaper coverage of the event and actual knowledge of it by only a relatively few, only one of whom had drawn any negative conclusions from it about the Newspaper.
J.A. 412. These factors would be highly relevant to the question of whether there is “just and sufficient cause” — as defined independent of “gross misconduct” — for dismissal, but the arbitrator did not even suggest that they were relevant to the issue of “gross misconduct.”
If the majority is correct that the arbitrator refused to consider “the serious nature of [Mastropaolo’s] conduct, regardless of whether the crime to which she pled was treated as a felony or a misdemeanor,” ante at 8, then on what basis did the arbitrator consider the mitigating evidence, which clearly was part of the conduct? I think it is apparent that he did consider Ms. Mastropaolo’s conduct and the felonious nature of the conduct. He just refused to acknowledge the natural implication of the felony plea, in order to get to the issue of “just and sufficient cause.” If the felony plea did not constitute gross misconduct (and the arbitrator clearly stated that it did), and that was the only basis on which Ms. Mastropaolo’s dismissal rested, then how did the arbitrator conclude that Ms. Mastropaolo should receive any sanction? Again, it is clear that the arbitrator did consider the underlying conduct, he just did so in an impermissible manner. That is, he considered the conduct as an excuse to shift the issue from “gross misconduct” to “just and sufficient cause.” At the same time, he admitted that the conduct led to a felony plea, and that such a plea was an admission of “gross misconduct.”
As a non-exclusive list of grounds for termination, there is arguably (even probably) a catch-all category that would permit the definition given to “just and sufficient cause” by the arbitrator. That is, if Media General’s reason for dismissal did not fall within one of the enumerated examples of “just and sufficient cause,” the company might have argued that it nevertheless had “just and sufficient cause” for termination. But Media General was not relying on any catch-all category, so any reliance on a definition of “just and sufficient cause” without regard to “gross misconduct” was simply irrelevant. Not merely unreasonable, but irrelevant, and consequently demonstrably at odds with the language of the contract.
The majority accepts the arbitrator’s view that the “dispositive question,” ante at 10, was whether the plea of guilty and all the surrounding circumstances fell within his free-standing interpretation “just and sufficient cause” for dismissal. That was patently not the dispositive question — any more than whether Ms. Mastro-paolo qualified for dismissal under one of the other enumerated grounds, such as “incompetency” or “reduction of force,” was the dispositive question. The only issue was whether a felony plea constituted “gross misconduct.” The majority describes the sequence of the arbitrator’s attempt to reason away from that issue, but fails to explain how that reasoning is plausible. The arbitrator’s ultimate finding was based on an answer to a question not put to him. His reasoning defies logic, *138 and is non-responsive to boot. As a result, Media General did not receive that for which it had bargained — an arbitrator that would base his decision on an interpretation of the contract. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
III.
This case is strikingly similar to Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int’l Union, 76 F.3d 606 (4th Cir.1996). In that case, the collective bargaining agreement limited the employer’s right to discharge to “proper cause.” Id. at 608. The company’s drug policy, which was incorporated into the agreement, provided for dismissal of employees who tested positive for drugs. Id. at 609. A dismissed employee, who tested positive for drugs, filed a grievance, which was sent to arbitration. The arbitrator found that the employee had tested positive, but refused to find in favor of the employer. The arbitrator cited the employee’s 15 years of service to the company and the harshness of the drug policy. Id. at 609-10. We vacated the arbitration award, stating that the arbitrator lacked the authority to ignore the language of the contract. Id. We specifically rejected the employee’s reliance on the “proper cause” standard contained in the contract, stating: “[T]he words ‘proper cause’ of the [collective bargaining agreement] cannot be the loophole through which the arbitrator bypasses the Drug Policy’s mandatory language to implement his own brand of industrial justice.” Id. The same result should obtain here. We should recognize the arbitrator’s reliance on “just and sufficient cause” for what it is — an attempt to bypass a finding of “gross misconduct” in order to pack the decision with his own notions of right and wrong.
IV.
An arbitrator is obliged to apply the collective bargaining agreement as written. “When an arbitrator’s words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.” Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358.
I respectfully concur in part and dissent in part.

. I concur in the majority’s resolution of the cross-appeal. Ante at 133-34. The district court did not err in denying Ms. Mastropao-lo’s request for an award of attorney’s fees. See United Food and Comm. Workers v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir.1989).

. A familiar example of this acknowledgment of factual guilt is that portion of the plea colloquy when the judge asks the defendant: "Are you pleading guilty because you are guilty?” Va. Sup.Ct. R. 3A:8; id. app. Form 6; see also Fed. R.Crim. Pro. 11(f). If the defendant does not answer in the affirmative, the judge will typically refuse to enter the plea. In certain cases, a defendant may plead guilty but not admit to factual guilt. Such a plea is known as an Alford plea. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Jones, 513 S.E.2d at 435. There is no indication that Ms. Mastropaolo entered an Alford plea.