COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


SHERON STEVENSON

                                                    MEMORANDUM OPINION* BY
v.       Record No. 2350-02-1              JUDGE JEAN HARRISON CLEMENTS
                                                            FEBRUARY 24, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                          John C. Morrison, Jr., Judge

        Joseph A. Pennington for appellant.

        Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General; Alice T. Armstrong, Assistant Attorney General,
        on brief), for appellee.


        Sheron Stevenson was convicted on his guilty pleas of two counts of robbery, in violation of

Code § 18.2-58, and two counts of use of a firearm in the commission of robbery, in violation of

Code § 18.2-53.1.  On appeal, Stevenson contends the trial court erred in denying his motion to

withdraw his guilty pleas before sentencing.  Finding no error, we affirm the convictions.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

                                    I.  BACKGROUND

        On February 6, 2002, Stevenson was indicted on four counts of robbery, four counts of the

use of a firearm in the commission of robbery, and two counts of conspiracy to commit robbery.  On

───────────────
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

April 4, 2002, Stevenson appeared before the trial court for arraignment.[1]  He was represented by his retained counsel, Robert E. Frank.  In accordance with the terms of a written plea agreement he entered into with the Commonwealth, Stevenson pled guilty to two counts of robbery and two counts of the use of a firearm in the commission of robbery.  In exchange for Stevenson's guilty pleas, the Commonwealth agreed to move to *nolle prosequi* the remaining charges.  The parties further agreed that the case was to be referred for a presentence report and that, in exchange for Stevenson's cooperation in testifying against his codefendants, the "appropriate disposition" of the matter would be for the court to sentence Stevenson "in its discretion, with the maximum period of active incarceration to be capped at the High End of the range recommended by the Sentencing Guidelines years and with such other suspended time, fines, and terms and conditions of Probation as the Court deems appropriate."  By its terms, the plea agreement was "the total agreement between the parties" and no "other inducements, promises, or coercion of any kind [were] imposed upon . . . [or] suggested to" Stevenson by the Commonwealth.  Both Stevenson and his attorney signed the plea agreement.

At the plea hearing, the trial judge questioned Stevenson extensively regarding his guilty pleas.  Stevenson, who was nineteen years old and had finished the eighth grade in school, told the trial judge he could read and write "a little bit."  Stevenson's attorney told the trial judge he had read every indictment and the plea agreement to Stevenson verbatim and discussed them with him.  Stevenson confirmed that his attorney had done so.  He further told the judge that he "underst[oo]d and consent[ed] to the [p]lea [a]greement completely and entirely," that "all statements and contents of the [p]lea [a]greement [were] entirely true and correct," that "the [p]lea [a]greement contain[ed] every part of the agreement made between the Commonwealth and [him] and [his] attorney," and

---

[1] Stevenson's arraignment was conducted by the Honorable Marc Jacobson.  Pursuant to Stevenson's request and the Commonwealth's consent, the case was subsequently transferred to the Honorable John C. Morrison, Jr., for sentencing.

that he signed the plea agreement "freely and voluntarily." In responding to the trial judge's questions, Stevenson also indicated that he "fully underst[oo]d the charges against [him]"; that he had talked to his lawyer "about each of the charges"; that he had had sufficient time to talk to his lawyer about the "possible defenses [he] might have to each of the charges"; that he "talked to [his] lawyer about whether [he] should plead guilty, not guilty, or *nolo contendere* to each of the charges"; that he "decide[d] for [himself] that [he] should plead guilty to each of the charges"; that he was pleading guilty to each of the charges "freely and voluntarily after full consultation with [his] attorney"; and that he was "pleading guilty to each of the charges because [he was], in fact, guilty of each of the charges."

In addition, Stevenson told the judge that no one had "threatened or forced him to plead guilty" and that no "person whatsoever [had] made any promises to him concerning each of [his] pleas of guilty," other than the terms of the written plea agreement. Stevenson also told the judge that he understood he was forfeiting certain rights by pleading guilty, including the right to defend himself, the right to a jury trial, the right to remain silent, the right to confront witnesses, and the right possibly to appeal. Stevenson further told the judge that he understood the possible sentence he faced by pleading guilty, including a mandatory eight-year sentence for the firearms charges and the possibility of two life sentences for the robbery charges. He also stated that he understood that parole had been abolished in Virginia. Finally, Stevenson stated that he understood all of the questions the trial judge had asked him at the plea hearing, that all of his answers to those questions had been "truthful, true, and correct," and that he had no questions he wanted to ask the judge or his attorney at that time.

Finding Stevenson had made each of the pleas of guilty "knowingly, voluntarily, and intelligently," the trial court accepted the pleas and found Stevenson guilty of the four charges. Finding Stevenson had entered into the plea agreement "knowingly, voluntarily, and intelligently,"

the trial court took the agreement under advisement pending the preparation and consideration of a presentence report.

Thereafter, Frank withdrew as Stevenson's attorney. Prior to sentencing, Stevenson, by his newly appointed attorney, filed a motion to withdraw his guilty pleas. Stevenson argued that he pled guilty because of his erroneous belief, based on his former counsel's alleged representation to him, that he could withdraw his guilty pleas if, after speaking with his mother, he decided not to cooperate with the Commonwealth. In support of that claim, Stevenson presented an affidavit executed by Frank on July 11, 2002. In that affidavit, Frank stated, in relevant part, as follows:

> 6.) Counsel explained to Defendant that his plea agreement was contingent upon his cooperation against co-defendants . . . , *and* that if he declined to cooperate that the Commonwealth would move to be released from the terms of the plea agreement and probably would add additional charges to those with which he was already charged
> Though Defendant was reluctant to make any decision without talking to his mother, he agreed to enter the plea with the *specific* understanding that, after consulting with his mother, if he decided *not* to cooperate that the plea agreement would be set aside.

> \* \* \* \* \* \* \*

> 8.) In light of Defendant's concerns and previous discussions with Defendant's mother wherein she indicated that she did not want her son to plead guilty, before the entry of the plea Counsel advised the prosecutor . . . that the plea agreement might fall apart after the Defendant spoke to his mother.

> 9.) In sum, counsel avers that Sheron Stevenson would not have . . . entered a guilty plea *but for* the belief that the Commonwealth would have sought release from the agreement if he chose to not cooperate against his co-defendants after consulting with his mother.

In response, the Commonwealth's attorney represented to the court that he had prosecuted the case and that there had been "no such discussion or agreement about mother's approval or anything else like that." The Commonwealth then argued as follows:

> Judge, the defendant changed his mind. That's the bottom line. That's all that happened here. He entered into this plea agreement voluntarily and intelligently. The Court's read the transcript of the hearing wherein Judge Jacobson accepted the guilty plea[s]. What we have here, apparently, is the defendant's mother being upset. Mr. Frank withdrew, as you may recall, because the defendant's mother sued him to get her retainer back.

The Commonwealth further argued that there was nothing in the record to support Stevenson's claim that he "had the understanding that if his mother disagreed he could withdraw" his guilty pleas. The plea agreement, which Stevenson told the court constituted the parties' entire agreement, did not, the Commonwealth maintained, "contemplate a withdrawal of the guilty plea[s]" if Stevenson refused to cooperate. Rather, the Commonwealth argued, the plea agreement provided that "[i]n exchange for his plea of guilty," the Commonwealth "agreed to nol-pross certain charges," and "[i]n exchange for his anticipated cooperation," the Commonwealth "agreed to impose a cap" on his sentence.

The trial judge denied the motion to withdraw the guilty pleas. In announcing that decision, the court found that Stevenson "fully understood what he was pleading guilty to. . . . He answered all questions to that effect." In so finding, the court rejected the evidence set forth in the former counsel's affidavit as to what Stevenson's understanding was when he pled guilty. Specifically, the judge stated that he did not "find it credible" that prior counsel told Stevenson he could simply withdraw his guilty pleas if he changed his mind. Rather, the trial judge stated, "I think that . . . what has occurred here is that this defendant got cold feet and decided not to go through with the agreement."

The trial court subsequently sentenced Stevenson in accordance with the terms of the plea agreement, and this appeal followed.

## II. ANALYSIS

On appeal, Stevenson asserts his pleas of guilty were not knowingly and voluntarily tendered with full knowledge of their import. Specifically, he argues the evidence was uncontroverted that he entered his guilty pleas in good faith under the honest mistake of material fact that he was advised by his attorney that he could withdraw his pleas if, after discussing the matter with his mother, he chose to do so. Thus, he contends, the trial court erred in refusing to allow him to withdraw his guilty pleas.

"Code § 19.2-296 allows a defendant to withdraw a guilty plea before sentence is imposed." Jones v. Commonwealth, 29 Va. App. 503, 511, 513 S.E.2d 431, 435 (1999). "Whether a defendant should be permitted to withdraw a guilty plea rests within the sound discretion of the trial court to be determined based on the facts and circumstances of each case." Hall v. Commonwealth, 30 Va. App. 74, 79, 515 S.E.2d 343, 346 (1999). "The court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones, 29 Va. App. at 512, 513 S.E.2d at 435.

Rule 3A: 8(b) provides that "[a] circuit court shall not accept a plea of guilty . . . without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea." Therefore, a motion to withdraw a guilty plea "should not be denied, if timely made, and if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and would not otherwise have been made." Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949). In other words,

> "[l]eave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any

reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."

Id. at 324, 52 S.E.2d at 874 (quoting 14 Am. Jur. Criminal Law § 287).  However, "the truth and accuracy of representations made by an accused as to . . . the voluntariness [and understanding] of his guilty plea will be considered conclusively established by the trial proceedings, unless the [accused] offers a valid reason why he should be permitted to controvert his prior statements." Anderson v. Warden, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981).  Determination of whether a court erred in denying a motion to withdraw a guilty plea "requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he pleaded to the charge."  Id. at 322, 52 S.E.2d at 872.

Here, Stevenson, who was represented by an attorney, tendered pleas of guilty at his arraignment to two charges of robbery and two charges of use of a firearm in the commission of robbery.  Stevenson entered the pleas pursuant to a plea agreement.  At the conclusion of the plea hearing, the trial court found each of Stevenson's pleas to have been knowingly, voluntarily, and intelligently made.  The record supports the trial court's findings.

The trial judge questioned Stevenson extensively to ensure that he was entering the pleas voluntarily, knowingly, and with a clear understanding of their effect.  Stevenson acknowledged that the charges and the plea agreement had been read verbatim to him and that he understood them. Additionally, Stevenson told the trial judge that he was entering his pleas freely and voluntarily and that no one, including his attorney and the Commonwealth's attorney, had threatened or forced him to plead guilty or made any promises concerning his pleas of guilty other than those set forth in the plea agreement.  Stevenson further assured the trial judge that the plea agreement was accurate and contained "every part of the agreement between the Commonwealth and [him] and [his] attorney." When given the opportunity by the trial judge to ask clarifying questions of his attorney or the court

about the claimed promise of his right or opportunity to later withdraw his pleas, Stevenson declined. Plainly, Stevenson did not alert the trial judge to his claimed promise.

Stevenson's motion to withdraw his guilty pleas was based solely on his former attorney's affidavit. The trial court, finding the evidence in the affidavit in conflict with Stevenson's statements at the plea hearing, chose not to accept the representation in the affidavit that Stevenson believed, when tendering his guilty pleas, "that, after consulting with his mother, if he decided not to cooperate that the plea agreement would be set aside." (Emphasis omitted.) The trial judge did not find it credible that Stevenson's former counsel would have instructed him that he could simply withdraw his pleas if he changed his mind after talking to his mother, and specifically rejected the assertion that such instruction had been given. Thus, the trial court found that Stevenson "fully understood what he was pleading guilty to" and did not enter his pleas of guilty in good faith under an honest mistake of material fact.

Because the trial court's findings are supported by the record and are not, in light of the circumstances of this case, plainly wrong, we hold the trial court did not abuse its discretion in denying Stevenson's motion for leave to withdraw the guilty pleas. Accordingly, we affirm Stevenson's convictions.

Affirmed.